*ords, since they are highly relevant to the transfer decision.*

S.Rep. No. 225, 98th Cong., 2d Sess. 391 (1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3531 (emphasis added). Although it could be argued that the Report's concern for "reasonableness" and "flexibility" support the government's position here, and the holding in *Parker,* the context of that language requires a contrary interpretation. The Report simply states that the actual records need not be produced following "reasonable" efforts to find them so long as "a certification" of their unavailability is tendered. Similarly, the concern for "flexibility" is addressed, not by relaxing the jurisdictional prerequisite, but by insuring that the records are not required until the appropriate stage of the proceedings.

Accordingly, neither the clear language of the statute, nor its legislative history, allows for substantial, good faith, but inadequate compliance with the required record certification. Here, the jurisdictional prerequisites of § 5023 were not met and the district court was therefore without jurisdiction to transfer I.H. to district court for criminal prosecution as an adult. Accordingly, the district court's August 30, 1996, order transferring I.H. for adult criminal prosecution is without force and effect.

Although the district court's transfer order has no effect, I.H. does not automatically escape adult prosecution in federal court. The United States Attorney is still free to proceed under § 5032 because I.H. has not yet "attained his twenty-first birthday." *See* 18 U.S.C. § 5031 and *United States v. Juvenile Male,* 923 F.2d at 620.

### III.

For the above reasons, we will vacate the August 30, 1996, order transferring I.H., to the district court for criminal prosecution as an adult and remand for further proceedings.

Proceedings under the JDA begin with the filing of an information. 18 U.S.C. § 5032 ¶ 3. However, § 5032 does not state when the record certification must be provided to the district court. The Tenth Circuit has held that the record certification must be filed when the information is filed. *United States v. Brian N.,* 900 F.2d at 223 ("We believe that the statute mandates the filing of such records at the commencement of the proceedings—the filing of the information."). However, the Second Circuit, while stressing that the government "should always endeavor to supply the district court with official juvenile records prior to the filing of an information," has found that the government's furnishing of a certified copy of the juvenile's prior record after the transfer motion was filed but immediately prior to the district court's decision to order the transfer was timely. *United States v. Wong,* 40 F.3d at 1370.

The issue here, however, is not the precise timing of the filing of the record certification, but whether the government filed the record certification as required for jurisdiction over a juvenile. Because we have found that the requirement was not met in this case, we offer no opinion on the question of what stage prior to the court obtaining jurisdiction over a juvenile the record certification must be filed.

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Norvell Webster CRUMP,
Defendant–Appellant.**

No. 95–5903.

United States Court of Appeals,
Fourth Circuit.

Argued April 11, 1997.

Decided July 23, 1997.

**ARGUED:** Jane Moran, Williamson, WV, for Appellant. Rebecca A. Betts, United States Attorney, Huntington, WV, for Appellee. **ON BRIEF:** Sharon M. Frazier, Assistant United States Attorney, Huntington, WV, for Appellee.

Before HALL, WILKINS, and NIEMEYER, Circuit Judges.

Affirmed by published opinion. Judge K.K. HALL wrote the opinion, in which Judge WILKINS and Judge NIEMEYER joined.

## OPINION

K.K. HALL, Circuit Judge:

Norvell Webster Crump was convicted in the district court of conspiring to possess cocaine base with the intent to deliver it, and, with regard to his possession of an antique shotgun he used to murder a rival drug dealer, of violating 18 U.S.C. §§ 922(g) and 924(c)(1). The district court sentenced Crump to life imprisonment plus five years. Crump appeals his convictions and sentence. We affirm.

### I.

Late in the evening of July 20, 1994, the Huntington, West Virginia police, responding to an emergency call, discovered a dead body lying on the ground in the courtyard between a small house and a two-story building. The deceased was Vance Jones, a Charleston, West Virginia, resident who occasionally journeyed to Huntington to sell crack cocaine. Jones had been shot at close range with a 12-gauge shotgun. Crump was arrested the next day in connection with the crime, along with Leon Clairdy, an associate in Crump's drug trafficking operation.

The events leading to Jones's murder were ultimately pieced together at trial, largely through the testimony of five witnesses: Querida Dotson, who lived in the second-floor apartment of the building adjoining the courtyard; Curtis Jackson, who resided in the house across the way; Tammy Jackson, Curtis's wife, who had been at Dotson's apartment during the shooting; Clairdy, who, in accordance with a plea agreement, agreed to testify against Crump; and Clairdy's girlfriend, Jamie Redman.

Dotson had befriended Jones during one of his previous trips to Huntington, and she had permitted him to stay at her apartment in exchange for drugs. On this particular occasion, Jones had brought his brother, Bandele, with him. When Crump learned from Dotson that the Joneses had arrived, he plotted with Clairdy to rob them of their money and their drugs.

Crump and Clairdy put on dark clothing, and they walked the short distance from Redman's apartment to Dotson's. Crump carried a single-shot 12-gauge shotgun that had been crafted in 1911 by the Iver Johnson company, a Massachusetts gun manufacturer. Upon arriving at Dotson's apartment, the pair ascended the enclosed stairway and knocked on the door. When Dotson answered, Crump told her that he and Clairdy intended to rob the Joneses. Dotson declined to let them pass, however, out of concern for her children inside. Crump and Clairdy descended the stairs and waited beneath the overhang of a nearby carport.

As they waited, Mr. Jackson walked by, returning to his house from Dotson's apartment, where he had briefly gone to retrieve his cordless telephone from his wife. Crump had a short conversation with Jackson, during which Crump disclosed that he was "going to rob somebody." Not long after Jackson went back inside, Vance Jones, who apparently had been out plying his trade, arrived at the courtyard. As Clairdy watched, Crump confronted Jones and ordered him to lie down on the ground. When Jones refused, Crump shot him.

Crump and Clairdy immediately ran from the scene, stopping only for a few moments to permit Crump to disassemble the shotgun and dispose of it. Crump hid the weapon's receiver, comprising the stock and trigger apparatus, near an alley located behind an abandoned house. The pair then returned to Redman's apartment. Redman placed Crump's clothing in a plastic bag, which she then tossed into a vacant lot. The receiver and the clothing were eventually recovered by the police.

The grand jury charged Crump with (1) conspiring to possess and distribute cocaine base; (2) unlawfully possessing a firearm as a convicted felon; and (3) using and carrying a firearm during and in relation to a drug trafficking crime, i.e., attempting to possess through robbery a distributable amount of cocaine base. The firearms charges were

alleged to be violative of 18 U.S.C. §§ 922(g) and 924(c)(1), respectively.

A jury found Crump guilty of all three counts. At sentencing, the district court found that Crump had committed first degree murder during the attempted robbery of Jones. Hence, pursuant to Sections 2D1.1(d)(1) (relating to offenses involving drugs) and 2K2.1(c)(1)(B) (relating to firearms offenses) of the Sentencing Guidelines, Crump's offense level was determined to be 43. The district court imposed concurrent life sentences on the drug conspiracy and felon-in-possession convictions,[1] to which it appended five years for the § 924(c)(1) conviction. Crump appeals his convictions and his sentence.

## II.

### A.

Crump initially challenges the constitutionality of the firearms statutes that he stands convicted of violating, asserting that their continued vitality has been called into question by *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). In *Lopez*, the Supreme Court struck down the Gun–Free School Zones Act of 1990, 18 U.S.C. § 922(q), because it was unable to ascertain that the statute regulated an activity substantially affecting interstate commerce. We have recently upheld the constitutionality of § 922(g) against a *Lopez* challenge. *See United States v. Wells*, 98 F.3d 808, 811 (4th Cir.1996).

With regard to § 924(c)(1), we have no difficulty concluding that, at least to the extent that it criminalizes the use and carrying of a firearm during and in relation to a drug trafficking crime, the statute represents a valid exercise of Congress's authority under the Commerce Clause. The statute provides, in pertinent part:

Whoever, during and in relation to any crime of violence or drug trafficking crime ... for which he may be prosecuted in a court of the United States, uses or carries

a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for [five years to life, depending on the nature of the firearm, whether a destructive device was employed, and whether the violation gives rise to a second or subsequent conviction under the statute].

18 U.S.C.A. § 924(c)(1) (West Supp.1997). The resultant term of imprisonment is consecutive to that imposed for any other conviction. *Id.*

Crump does not contend that *Lopez* would bar his prosecution in federal court for the predicate offense in this case, *i.e.,* attempting to possess a distributable amount of a controlled substance by relieving Jones of his drug stash. Indeed, in *United States v. Leshuk*, 65 F.3d 1105, 1112 (4th Cir.1995), we reaffirmed, in light of *Lopez*, the constitutionality of 21 U.S.C. § 841(a)(1), under which Crump could have been charged.

The question, rather, is whether that part of the statute proscribing the use or carrying of a firearm during or in relation to a federally prosecutable drug trafficking crime suffers from the same infirmities that, in *Lopez*, rendered unconstitutional the Gun–Free School Zones Act. The answer is no.

In *Lopez*, the Supreme Court observed that § 922(q) had "by its terms ... nothing to do with 'commerce' or any sort of economic enterprise." 514 U.S. at 561, 115 S.Ct. at 1630–31. The Court also noted that the statute had "no express jurisdictional element which might limit its reach to a discrete set of firearm possessions that additionally have an explicit connection with or effect on interstate commerce." *Id.* at 562, 115 S.Ct. at 1631.

In contrast, § 924(c)(1), "by its terms," prohibits only such use or carrying of a firearm that occurs during or in relation to a drug *trafficking* crime. "Trafficking," of course, not only substantially affects commerce; it is commerce. Moreover, the stat-

---

**1.** Crump was an armed career criminal pursuant to 18 U.S.C. § 924(e)(1), in that he had three previous convictions for a violent felony or a serious drug offense. Thus, his conviction under

§ 922(g) was not subject to the ten-year maximum term of imprisonment specified by 18 U.S.C. § 924(a)(2).

ute's reach is limited to a discrete set of drug trafficking crimes: those that "may be prosecuted in a court of the United States." It therefore contains the express restriction on indiscriminate prosecution that was lacking in the Gun–Free School Zones Act.

We hold that § 924(c)(1), insofar as it proscribes the use or carrying of a firearm during and in relation to a drug trafficking crime, passes constitutional muster under *Lopez*. Our holding places us in agreement with all of the circuits that have considered the question. *See United States v. Staples*, 85 F.3d 461, 463 (9th Cir.), *cert denied*, —— U.S. ——, 117 S.Ct. 318, 136 L.Ed.2d 233 (1996); *United States v. Brown*, 72 F.3d 96, 97 (8th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 2581, 135 L.Ed.2d 1095 (1996); *cf. United States v. Bolton*, 68 F.3d 396, 399 n. 2 (10th Cir.1995) (§ 924(c)(1) constitutional, insofar as it prohibits the use or carrying of a firearm during or in relation to a crime of violence), *cert. denied*, —— U.S. ——, 116 S.Ct. 966, 133 L.Ed.2d 887 (1996).

### B.

We reject the remainder of Crump's specific challenges to his firearms convictions. Crump maintains that, with respect to the § 922(g) charge, the government did not show that he possessed the shotgun "in or affecting commerce," and that, with respect to the § 924(c)(1) charge, the government failed to prove the predicate offense, *i.e.*, the specific drug trafficking crime that the shotgun was used or carried during and in relation to.

In actuality, there was testimony that the shotgun used to murder Jones in West Virginia had been manufactured in Massachusetts, and, thus, that it had traveled in interstate commerce; such evidence is sufficient to establish the commerce element of § 922(g). *United States v. Langley*, 62 F.3d 602, 606 (4th Cir.1995) (en banc) ("to prove a violation of § 922(g)(1), the government must prove,

beyond a reasonable doubt, that . . . the possession was in or affecting commerce, because the firearm had travelled in interstate or foreign commerce at some point during its existence."), *cert. denied*, —— U.S. ——, 116 S.Ct. 797, 133 L.Ed.2d 745 (1996).[2] As for the § 924(c)(1) charge, the indictment alleged—and the jury was instructed—that the drug trafficking crime relating to the use and/or carrying of the shotgun was Crump's purported attempt to possess a distributable quantity of cocaine base by taking it from Jones. In accordance with the views of all the circuits considering the question, we hold that a defendant's conviction under § 924(c)(1) does not depend on his being convicted—either previously or contemporaneously—of the predicate offense, as long as all of the elements of that offense are proved and found beyond a reasonable doubt. *E.g., United States v. Anderson*, 39 F.3d 331, 355 (D.C.Cir.1994) (collecting cases), *vacated in part on other grounds*, 59 F.3d 1323 (D.C.Cir.) (en banc), *cert. denied*, —— U.S. ——, 116 S.Ct. 542, 133 L.Ed.2d 445 (1995). In Crump's case, the evidence was sufficient to permit the jury to find beyond a reasonable doubt that he attempted to rob Jones of crack cocaine, intending to later distribute it.

### III.

### A.

Crump next argues that the district court erroneously found that he was competent to stand trial. A few months after his arrest, Crump was sent to FCI–Butner for a psychiatric evaluation. Based on the report of the evaluation, a magistrate judge found Crump competent. Subsequently, however, while he remained incarcerated awaiting trial, Crump began to behave in an aberrant manner. The most serious episode involved an alleged suicide attempt, which Crump then denied had occurred.

The district court conducted a second competency hearing, during which it questioned

---

**2.** Implicit in *Langley*, inasmuch as it was decided four months after *Lopez*, is our view that the movement of a firearm beyond the boundaries of its state of manufacture "substantially affects" interstate commerce, consistent with the dictates of the Supreme Court in *Lopez*, 514 U.S. at 559–

60, 115 S.Ct. at 1630. Thus, contrary to Crump's assertion, the district court did not err by refusing to give his proposed instruction that the jury find, as a prerequisite to conviction, that his possession of the shotgun "had a substantial impact on interstate commerce."

Crump extensively regarding his understanding of the nature of the charges against him and his ability to assist counsel in his defense. *See Dusky v. United States,* 362 U.S. 402, 402–03, 80 S.Ct. 788, 788–89, 4 L.Ed.2d 824 (1960) (test for competency to stand trial is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.").

The court was satisfied with Crump's answers, adjudging him fit for trial. The district court's determination may not be disturbed unless it was "clearly arbitrary or unwarranted." *Hall v. United States,* 410 F.2d 653, 658 (4th Cir.1969). We have reviewed the materials before us and have considered the arguments of the parties, and we conclude that the ruling below was neither arbitrary nor unwarranted.

### B.

■ Crump accuses the government of misconduct with regard to several incidents occurring during the course of the proceedings in the district court. His complaints, in a nutshell, are that the government (1) concealed the whereabouts of Bandele Jones; (2) failed to disclose prior to trial that Craig Crawford would deny an assertion contained in a bill of particulars that he participated in the charged drug conspiracy; (3) misrepresented the probative value of its expert's testimony as to pellet holes in the victim's shirt, in order to get the gruesome, blood-soaked garment in front of the jury; and (4) improperly questioned and/or cross-examined several witnesses, including Jones and Crawford. Because the allegations of prosecutorial misconduct were not brought to the district court's attention until after the trial, our review is limited to plain error. *United States v. Mitchell,* 1 F.3d 235, 242 (4th Cir. 1993).

There is precious little evidence that the government engaged in any deception or gamesmanship; more importantly, the preju-

dicial effect of the government's supposed transgressions—alone or in combination with each other—was, at most, very slight, particularly inasmuch as Jones and Crawford appeared at trial and offered testimony favorable to the defense. *See United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 1777–78, 123 L.Ed.2d 508 (1993) (correction of plain error appropriate only if the error "affects substantial rights," which usually means that it must have influenced the outcome of the trial to the detriment of the defendant). The government's alleged misconduct, even if it occurred, did not amount to plain error.

### IV.

■ Crump contends finally that the district court erred by sentencing him to life imprisonment, pursuant to §§ 2D1.1(d)(1) and 2K2.1(c)(1)(B) of the Sentencing Guidelines. These guidelines direct that a defendant convicted of certain drug or firearm offenses, respectively, be accorded, under the circumstances specified therein, a base offense level of 43.[3]

In the case of the former, a defendant who has conspired to possess controlled substances must be sentenced in conformance with U.S.S.G. § 2A1.1 if "a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111[.]" United States Sentencing Commission, *Guidelines Manual,* § 2D1.1(d)(1) (Nov.1995). The base offense level accorded all those sentenced under U.S.S.G. § 2A1.1, pertaining to first degree murder, is 43. The referenced section of the Criminal Code provides:

> Murder is the unlawful killing of a human being with malice aforethought. *Every murder* perpetrated by … any … kind of willful, deliberate, malicious, and premeditated killing; or *committed in the* perpetration of, or *attempt to perpetrate, any* arson, escape, murder, kidnaping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, burglary, or *robbery … is murder in the first degree.*

---

**3.** Sentencing at Level 43, absent any downward adjustments or departures, requires the district

court to impose a life sentence.

18 U.S.C.A. § 1111(a) (West Supp.1997) (emphases supplied). With regard to § 2A1.1, the Sentencing Commission has noted that "this guideline ... applies when death results from the commission of certain felonies." U.S.S.G. § 2A1.1, comment. (n.1).[4]

The district court found that Crump had accosted Vance Jones "for the purpose of robbing him of cocaine base that[Crump] believed the victim had on his person," and that during the course of the attempted robbery, "Crump pulled the trigger that killed the victim." We review the district court's findings of fact at sentencing only to assure ourselves that they are not clearly erroneous. 18 U.S.C. § 3742(e); *United States v. Fletcher*, 74 F.3d 49, 55 (4th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 157, 136 L.Ed.2d 101 (1996). If the court's findings may rationally be said to be supported by a preponderance of the evidence, they may not be disturbed on appeal. *See, e.g., United States v. Loayza*, 107 F.3d 257, 265 (4th Cir.1997).

The district court's findings in this case are not clearly erroneous. Clairdy testified that he watched Crump shoot Jones; both Clairdy and Redman testified that Crump had gone to Dotson's residence to rob Jones. The court could reasonably credit the testimony of both witnesses.

At bottom, Crump's real complaint is that he was, in effect, tried and sentenced for first degree murder without the benefit of a jury finding the same beyond a reasonable doubt. We have previously held that this method of "real offense" sentencing does not offend the Constitution. *United States v. Engleman*, 916 F.2d 182, 184 (4th Cir.1990).

### V.

Crump's convictions and his sentence are affirmed.

*AFFIRMED.*

---

**4.** In the case of U.S.S.G. § 2K2.1(c)(1)(B), a defendant who has used or possessed any firearm in connection with the commission (or attempted commission) of another offense must, "if death resulted," be sentenced in conformance with "the most analogous guideline contained in Chapter Two, Part A, Subpart 1" if the base offense level would thereby increase. If the district court correctly found that Crump committed first degree murder, the most analogous guideline would be § 2A1.1, the same guideline to which we are directed by § 2D1.1(d).