**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 97-4720

ROBERT MOSES WILKERSON,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Malcolm J. Howard, District Judge.
(CR-96-167-H)

Submitted: January 12, 1999

Decided: March 2, 1999

Before NIEMEYER and MICHAEL, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Joseph E. Zeszotarski, Jr., POYNER & SPRUILL, L.L.P., Raleigh,
North Carolina, for Appellant. Janice McKenzie Cole, United States
Attorney, Anne M. Hayes, Assistant United States Attorney, John
Howarth Bennett, Assistant United States Attorney, Raleigh, North
Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

A jury convicted Robert Moses Wilkerson of conspiracy to distribute and possess with intent to distribute crack cocaine in violation of 21 U.S.C. § 846 (1994) (Count 1), and using or carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C.A. § 924(c) (West Supp. 1998) (Counts 2, 3, and 8). The district court sentenced him to life imprisonment on Count 1, a 60-month consecutive sentence on Count 2, a 240-month consecutive sentence on Count 3, and a 240-month consecutive sentence on Count 8.

Wilkerson appeals his convictions, asserting that the evidence was insufficient to convict him under § 924(c) on Count 2, the Government in its closing argument improperly stated that in order to acquit Wilkerson the jury must find that Government witnesses conspired to obtain a conviction, and the Government violated 18 U.S.C.A. § 201(c)(2) (West Supp. 1998), by promising leniency in exchange for its witnesses' testimony. Wilkerson also appeals his sentence on the grounds that the district court erred in sentencing him to life imprisonment when it cross-referenced to the first-degree murder guideline, see U.S. SENTENCING GUIDELINES MANUAL §§ 2D1.1(d), 2A1.1 (1995), and in sentencing him to three consecutive sentences for the § 924(c) convictions in Counts 2, 3, and 8. Finding no reversible error, we affirm.

I.

Wilkerson first asserts that the evidence was insufficient to convict him of using or carrying a firearm on June 6, 1992, during and in relation to a drug trafficking crime (Count 2). In deciding whether the evidence was sufficient, the relevant question is not whether the court is convinced of guilt beyond a reasonable doubt, but rather whether the evidence, when viewed in the light most favorable to the govern-

2

ment, was sufficient for a rational trier of fact to have found the essential elements of the crime beyond a reasonable doubt. See United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc), cert. denied, ___ U.S. ___, 65 U.S.L.W. 3586 (U.S. Feb. 24, 1997) (No. 96-6868); Glasser v. United States, 315 U.S. 60, 80 (1942). If substantial evidence exists to support a verdict, the verdict must be sustained. See Glasser, 315 U.S. at 80.

Testimony at trial discloses that Wilkerson was involved with Ralph Winkfield, Chris Speights, Ralph Speights, and many others in a conspiracy to distribute crack cocaine in the Fayetteville, North Carolina, area from January 1992 until approximately October 1996. On June 6, 1992, officers stopped a car after they observed it leave a house suspected of drug activity. Wilkerson was one of four occupants in the car, and he was riding in the front passenger seat. Officers discovered a semi-automatic weapon under Wilkerson's seat and 1.1 grams of crack cocaine in his sock. Wilkerson admitted ownership of both the gun and drugs. Wilkerson told officers that he had traded the gun for another gun earlier in the day. Finally, Ralph Winkfield testified that he was Wilkerson's sole supplier of crack cocaine in June 1992 and that he supplied Wilkerson with the 1.1 grams of crack.

To sustain a conviction under § 924(c), the Government must prove that (1) defendant used or carried a firearm, and (2) he did so during and in relation to a drug trafficking offense.[1] See United States v. Mitchell, 104 F.3d 649, 652 (4th Cir. 1997). We have defined "carry" as "knowing possession and bearing, movement, conveyance, or transportation of the firearm in some manner." Id. at 653; see also Muscarello v. United States, ___ U.S. #6D 6D6D#, 66 U.S.L.W. 4459, 4463 (U.S. June 8, 1998) (Nos. 96-1654, 96-8837) (holding that "carry" in § 924(c) "includes the carrying of a firearm in a vehicle"). In addition, "[a] firearm is carried `in relation to' a drug trafficking offense if it has `some purpose or effect with respect to the drug trafficking crime' and if its presence was not `the result of accident or coincidence.'" Mitchell, 104 F.3d at 654 (quoting Smith v. United States, 508 U.S. 223, 238 (1993)).

_____

[1] It is undisputed that Wilkerson's conduct in Count 2 did not amount to use of the gun, as use is defined in Bailey v. United States, 516 U.S. 137, 143, 148 (1995).

3

Although Wilkerson admits that he possessed the gun, he asserts that he did not carry it because he was not driving the vehicle in which officers found the gun. The evidence at trial discloses that officers observed the car in which Wilkerson was riding leave a house where officers believed drug activities occurred, the officers discovered the gun under the front passenger seat where Wilkerson was riding, and Wilkerson had traded earlier in the day another weapon for the one officers found. This evidence is sufficient to establish that Wilkerson bore, moved, conveyed, or transported the gun in some manner, regardless of the fact that he was not driving the car. See id. at 653.

Wilkerson also contends that the evidence did not establish that he carried the firearm "during and in relation to" the conspiracy. Winkfield's testimony sufficiently linked the gun and drugs to the conspiracy because Winkfield supplied the 1.1 grams of crack to Wilkerson during the time when the conspiracy was ongoing. See id. at 654. Contrary to Wilkerson's contention that Winkfield's testimony alone is insufficient as a matter of law to convict, uncorroborated testimony of a single witness may be sufficient even if the witness is an accomplice or informant. See United States v. Wilson , 115 F.3d 1185, 1189-90 (4th Cir. 1997). Finally, the jury had the opportunity to consider Winkfield's testimony in light of his involvement in the conspiracy, and we do not review the jury's credibility determination. See United States v. Wilson, 118 F.3d 228, 234 (4th Cir. 1997). We therefore find that the evidence was sufficient to convict Wilkerson of the § 924(c) violation charged in Count 2. See Mitchell, 104 F.3d at 652; Burgos, 94 F.3d at 862.

II.

Wilkerson next alleges that his convictions should be reversed because the Government made improper remarks during its closing argument when it suggested to the jury that in order to acquit Wilkerson the jury must believe that the Government's witnesses conspired to craft its case against Wilkerson in order to obtain some benefit for themselves. Because Wilkerson did not object to the Government's closing argument, our review is limited to review only for plain error. See United States v. Williams, 152 F.3d 294, 300 (4th Cir. 1998). To find plain error: (1) there must be an error; (2) the error must be plain;

4

(3) the error must affect substantial rights; and (4) if the first three conditions are met, the reviewing court must determine that the forfeited error "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" United States v. Olano, 507 U.S. 725, 732-37 (1993) (quoting United States v. Atkinson , 297 U.S. 157, 160 (1936)).

The Government in its closing argument summarized the evidence against Wilkerson on each count. In discussing the credibility of its witnesses, the Government stated:

> [R]emember what I told you in opening statement, the way to catch drug dealers is with other drug dealers. . . . People turn themselves in are convicted [sic]. They give information on other people. That's how you put together cases on more people. That's how it's done. And let's not be naive. Anybody like that who takes the witness stand certainly hopes that the information that they provide will get them some benefit--everybody knows that. But they all testified, they had to tell the truth. Without that, they get nothing. And none of them ha[s] been promised anything. . .. Is this all some sort of setup? I don't know. Why don't you ask[the drug dealers who testified]. Ask them if they all sat down in a room and decided to make all this up just to get something for themselves. People who weren't even together, often didn't know each other. They had one thing in common, they all conspired to distribute crack cocaine with . . . Wilkerson. That, they did have in common. So think about it. Think about what makes sense to you.

(J.A. at 482-83). The Government then pointed out that defense counsel questioned the witnesses' credibility on cross-examination but continued that determining credibility was within the jury's province.

Reversal based upon improper remarks by the prosecutor during closing argument is merited when the remarks actually were improper and when they prejudicially affected defendant's substantial rights so as to deprive him of a fair trial. See United States v. Chorman, 910 F.2d 102, 113 (4th Cir. 1990). Even if we assume, without deciding, that Wilkerson satisfies the first prong--that the prosecutor's remarks

5

were improper--the comments were not sufficiently prejudicial so as to deny Wilkerson a fair trial. See United States v. Young, 470 U.S. 1, 12-13 (1985) (discussing considerations relevant to issue of prejudice); Chorman, 910 F.2d at 113.

First, we note that reading the prosecutor's remarks in context, the comments constituted only a small part of the Government's closing argument and did not divert the jury's attention to extraneous matters. Moreover, defense counsel extensively cross-examined the Government witnesses about their plea agreements and possible sentence reductions. Defense counsel also asked whether the witnesses had discussed their testimony with other witnesses prior to trial, to which they responded that they had not. The prosecutor's comments therefore likely did not have a tendency to mislead the jury. Finally, absent the remarks, the record discloses that the evidence was sufficient to support Wilkerson's convictions. See Young, 470 U.S. at 12-13; Chorman, 910 F.2d at 113. Because we conclude that the prosecutor's comments did not substantially prejudice Wilkerson, we find no plain error. See Olano, 507 U.S. at 732-37.

III.

Wilkerson asserts in his reply brief that his convictions should be overturned because the Government secured witnesses' testimony in exchange for favorable treatment in violation of 18 U.S.C.A. § 201(c)(2) (West Supp. 1998). As support for his contention, Wilkerson relies on United States v. Singleton, 144 F.3d 1343 (10th Cir. 1998), reh'g en banc granted, 144 F.3d 1361 (10th Cir. July 10, 1998). The Government has moved to strike this portion of Wilkerson's reply brief, arguing that the issue is not properly before the court because it was not raised in Wilkerson's initial brief.

Although we deny the Government's motion to strike on the ground that Singleton did not issue until after Wilkerson filed his initial brief, we decline to overturn his convictions. We note that the Tenth Circuit has vacated the panel decision in Singleton. Moreover, we are not aware of any such rule in this circuit. Finally, because Wilkerson did not raise this novel argument at trial, we cannot say, even assuming error, that any error was plain. See Olano, 507 U.S. at 732-37.

IV.

Wilkerson also challenges his sentence on appeal, asserting that the district court erred in sentencing him to life imprisonment on Count 1. We review the district court's legal determinations de novo, see United States v. Nale, 101 F.3d 1000, 1003 (4th Cir. 1996), and its findings of fact for clear error. See United States v. Crump, 120 F.3d 462, 468 (4th Cir. 1997). "If the court's findings may rationally be said to be supported by a preponderance of the evidence, they may not be disturbed on appeal." Id.

Testimony at trial discloses that in November 1994, Chris Duffy, a regular customer of Wilkerson's, was with Wilkerson and Chris and Ralph Speights when Wilkerson and Duffy began arguing over money that Duffy owed Wilkerson for drugs. Wilkerson shot Duffy in the leg. Duffy begged Wilkerson to spare his life, but Wilkerson shot Duffy in the head. When Duffy slumped to the ground, Wilkerson fired another shot into Duffy's head. Wilkerson admitted shooting Duffy to Winkfield but later blamed the shooting on Ralph Speights.

The probation officer recommended for the conspiracy count (Count 1) a base offense level of forty-three. The officer relied on the cross-reference in USSG § 2D1.1(d)(1) to apply the first-degree murder guideline in USSG § 2A1.1, reasoning that Wilkerson's conduct fell within 18 U.S.C.A. § 1111 (West Supp. 1998).[2] With a total offense level of forty-three and a criminal history category of I, the applicable guideline range was life imprisonment. See USSG Ch. 5, Pt. A.

_____

**2** Section 1111 provides that

> [m]urder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by . . . willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of . . . any . . . murder . . .; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree.

18 U.S.C.A. § 1111(a).

7

Sentencing on a drug conspiracy conviction is controlled by USSG § 2D1.1. That section includes a cross-reference that applies "[i]f a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States." USSG § 2D1.1(d)(1). In such cases, the sentencing court is to "apply § 2A1.1 (First Degree Murder)." Id. In turn, USSG § 2A1.1 simply states "Base Offense Level: 43." Thus, if the district court finds by a preponderance of the evidence that a victim was murdered in relation to the federal crime or crimes for which defendant was convicted, it must apply a base offense level of forty-three.

Wilkerson first asserts that the application of the cross-reference to the first-degree murder guideline resulted in impermissible double counting. He argues that applying the cross-reference essentially is the same as applying the specific offense characteristic in USSG § 2D1.1(b)(1) (providing for a two-level enhancement if a dangerous weapon--including a firearm--was possessed) because the murder used to enhance his sentence on the conspiracy count also was the basis for his § 924(c) conviction on Count 8. Because the guidelines explicitly forbid as double counting the application of USSG § 2D1.1(b)(1) when defendant has been convicted of a § 924(c) offense, see USSG § 2K2.4, comment. (n.2), Wilkerson asserts that the application of the cross-reference also is impermissible double counting.

The guidelines, however, do not explicitly prohibit the imposition of both the cross-reference in USSG § 2D1.1(d)(1) and a consecutive sentence on a § 924(c) conviction. Moreover, Wilkerson has not cited any authority directly on point to support his position, nor have we found any. Even without an express prohibition, Wilkerson contends that the guidelines did not intend for him to be punished twice for the same conduct.

Wilkerson asserts that the same conduct was used to apply the cross-reference and the consecutive sentence on the § 924(c) offense. Although the same underlying facts surrounding Chris Duffy's murder were used to enhance Wilkerson's sentence by applying the cross-reference and to impose a consecutive sentence on the § 924(c) offense, the triggering event for each application is different. For the

8

cross-reference, the triggering event was the murder; for the consecutive sentence under § 924(c), the triggering event was the fact that Wilkerson used or carried the firearm. Because the cross-reference and the consecutive sentence address separate and distinct acts, we find that application of both was not contrary to the guidelines' intent.

Wilkerson finally contends that even if the cross-reference was appropriate, the evidence did not establish premeditation. Contrary to Wilkerson's assertion, however, the Government established premeditation by a preponderance of the evidence. See Crump, 120 F.3d at 468. During an argument between Wilkerson and Duffy over money owed to Wilkerson for drugs, Wilkerson shot Duffy in the leg. Duffy pleaded for his life, but Wilkerson twice shot him in the head--once after Duffy had slumped to the ground. Although Wilkerson challenges Chris Speights' credibility, we do not review the fact finder's credibility determinations. See Wilson, 118 F.3d at 238. We therefore find that the district court's findings were not clearly erroneous.

V.

Next, Wilkerson challenges his sentences for his § 924(c) convictions--60 months on Count 2, 240 months on Count 3, and 240 months on Count 8--claiming that the district court erred in ordering that Wilkerson serve each § 924(c) sentence consecutively. We have held, however, that multiple, consecutive sentences under § 924(c) are appropriate whenever there have been multiple, separate acts of using or carrying a firearm, even when all of those acts relate to a single predicate offense. See United States v. Camps , 32 F.3d 102, 108 (4th Cir. 1994). Wilkerson was convicted of multiple, separate incidents of using or carrying a firearm during the course of a drug distribution conspiracy. Thus, under the reasoning in Camps , the district court did not err in sentencing Wilkerson to three consecutive sentences for his § 924(c) convictions.

VI.

Accordingly, we affirm Wilkerson's convictions and sentence and deny the Government's motion to strike. We dispense with oral argument because the facts and legal contentions are adequately presented

9

in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

10