PER CURIAM:
Larry Allen Aikens appeals his convictions in the Western District of North *221 Carolina on drug conspiracy and firearms charges, contending that the evidence supporting those convictions is insufficient. He also asserts that he was sentenced beyond the applicable Guidelines range on two “moonshining” offenses to which he had pleaded guilty. As explained below, we affirm his conviction for drug conspiracy and conclude that any error in his sentence for moonshining was harmless. On the basis of the Government’s admission of a failure of its proof on the firearms charge, we vacate that conviction and remand for dismissal of the underlying charge.
I.
On October 7, 2003, the grand jury returned a one-count indictment against Larry Allen Aikens (“Larry” or “Larry Aikens”) and his son, Lewis Darrell Aikens (“Lewis” or “Lewis Aikens”), charging them with manufacturing and possessing with intent to distribute more than 100 marijuana plants, and aiding and abetting each other in this offense, in contravention of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Subsequently, on December 2, 2003, the grand jury returned a superseding indictment, against Larry only, charging him with four offenses: (1) conspiracy with Lewis and others to manufacture and possess with intent to distribute more than 100 marijuana plants, in contravention of 21 U.S.C. § 846; (2) possession of thirty-one firearms by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); (3) possession of an unregistered distilling apparatus, in contravention of 26 U.S.C. § 5601(a)(1); and (4) unlawful production of distilled spirits, in violation of 26 U.S.C. § 5601(a)(8). Both Larry’s and Lewis’s drug offenses were alleged to have involved the same marijuana plants, and to have occurred between approximately July 2003 and October 6, 2003.
The joint trial of Larry (on the charges lodged in the superseding indictment) and Lewis (on the charge in the original indictment) began on January 5, 2004. Prior to jury selection, Larry pleaded guilty to the third and fourth counts, i.e., the moonshining offenses. On the drug conspiracy and firearms charges against Larry, as well as the drug manufacturing and possession count against Lewis, the prosecution adduced the following evidence at trial.[1]
In late August 2003, officers of the United States Department of Agriculture Forest Service were alerted that a pilot with the North Carolina State Bureau of Investigation had spotted some suspicious cultivated sites during a flyover of the Big Knob area of the Pisgah National Forest in western North Carolina. In early September 2003, Forest Service officers found and began monitoring three marijuana patches in that area, within Madison County, North Carolina. The patches were accessible from the Hickory Log Branch, a trail that had once been maintained by the Forest Service. The closest patch to the trail was several hundred feet away, and tracks indicated that the trail had recently been used by an all-terrain vehicle (“ATV”).
On October 3, 2003, Forest Service officers observed that the plants in the marijuana patches were heavily budded and ready for harvesting. A decision was then made to begin constant surveillance of the patches. At about eleven o’clock on the morning of October 5, 2003, two teams of officers entered the general area of the patches from different directions. Along *222 the way, one of the teams, including Agent Harold Young, Jr., surprised what was believed to be a person or animal, causing the person or animal to flee through the woods, or to be “flushed” from the area. Subsequently, upon arriving at each of the three marijuana patches, the officers discovered that the plants had been harvested since their previous visit two days earlier. The officers also found fresh bootprints belonging to two different persons at the three patches. These bootprints were tracked to a previously undiscovered fourth marijuana patch sheltered by large poplar trees. About 250 feet from that patch (and approximately a quarter- to a half-mile downhill from the other three marijuana patches), one of the officers, Claude Stribling, discovered an ATV parked on the nearby Hickory Log Branch. Stribling followed the fresh tracks of the ATV, ultimately determining that the tracks originated on Larry Aikens’s property, near his residence (about two miles downhill from where the parked ATV was found).
Meanwhile, other officers monitored the ATV, in the event someone came to retrieve it. Later, Agent Young led officers to the spot where he earlier had “flushed” a person or animal, finding four duffel bags full of newly harvested marijuana nearby. One of the bags appeared to be a United States Army bag, and it was marked with Lewis Aikens’s name and Social Security number.
Additional officers were then brought onto the scene, and surveillance of the ATV continued through the night. At about nine o’clock the following morning, October 6, 2003, an officer hidden alone at the site, Michael Tipton, spotted Larry and Lewis walking from the direction of the ATV tracks and approaching the ATV. Tipton overheard one of the men say to the other, “What do you think?” The other man replied, “I don’t see them. Let’s go on up the trail.” Larry and Lewis then continued walking up the Hickory Log Branch, which led to an access point for the upper marijuana patches and the site where the duffel bags of freshly harvested marijuana had been dropped. They walked for one to two minutes, covering about 200 feet, before they met another officer, who initiated arrest procedures.
Shortly after the arrests, the officers, including Agent Jenny Davis, asked Larry and Lewis whether the abandoned ATV belonged to either of them. First Larry, and then Lewis, responded “no.” Davis had also questioned Larry and Lewis about what they were doing in the area. Larry initially indicated, with Lewis’s agreement, that they were “just walking.” Some twenty or thirty minutes later, as officers were leading Larry and Lewis from the area, Larry initiated a conversation about bear hunting, and stated that he and Lewis had been walking and tracking bears.
Also on the day of the arrests, officers observed that Lewis had numerous wounds on his body, consistent with cuts from greenbrier and blackberry briers found in the woods surrounding the marijuana patches. And officers found evidence indicating that the abandoned ATV belonged to Lewis — a point on which there ultimately was no dispute.
On October 7, 2003, the day following the arrests, search warrants were executed on the respective homes of Larry and Lewis, which were located less than a half-mile apart. In Larry’s residence and elsewhere on his property, officers found and seized, inter alia, the following: nine revolvers, sixteen rifles, four shotguns, and two muzzle loaders; fourteen bags of marijuana; several sets of scales of the type used by illegal drug dealers, including one set containing marijuana residue; and numerous plastic baggies, also of the type *223 used by drug dealers.[2] From Lewis’s property, officers recovered electronic and mechanical weighing scales, planting trays, marijuana seeds, fertilizer, and several rolls of medical tape matching that used to stake plants in the marijuana patches found in the Pisgah National Forest.
At the close of the prosecution’s case-in-chief on January 7, 2004, Larry Aikens moved pursuant to Rule 29 of the Federal Rules of Criminal Procedure for a judgment of acquittal on the drug conspiracy and firearms counts. See Fed.R.Crim.P. 29(a) (“After the government closes its evidence or after the close of all the evidence, the court on the defendant’s motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction.”). Larry contended that the Government’s evidence of a drug conspiracy was insufficient, and he made a separate argument (not pursued on appeal) on the firearms charge. The court denied the motion.
Subsequently, on January 8, 2004, at the close of all of the evidence and before the jury retired, Larry renewed his Rule 29 motion. In addition to his previous contentions, Larry asserted that the firearms count should be dismissed for “lack of any evidence proving a nexus between these firearms and interstate commerce.” See J.A. 633.[3] The Government responded that, “given the fact that the jury has heard evidence of nine revolvers, sixteen rifles, four shotguns and two muzzle loaders, that it would be a question for the jury to determine based upon their reason and common sense as to whether any one of those guns would have in any way traveled in interstate commerce.” Id. at 634. The court then denied Larry’s renewed Rule 29 motion.
Later on that same day, the jury returned a verdict of guilty against Larry Aikens on the drug conspiracy and firearms charges, and against his son Lewis on the drug manufacturing and possession count. After the jury was excused, Larry again renewed his Rule 29 motion, which the court denied. See Fed.R.Crim.P. 29(c)(l)-(2) (providing that defendant may renew motion for judgment of acquittal within seven days after guilty verdict, and court may then set aside verdict and enter acquittal).
On August 20, 2004, the court sentenced Larry Aikens to 120 months of imprisonment on the drug conspiracy and firearms convictions, and to sixty months on each of the two moonshining convictions, with all prison terms to be served concurrently. Larry has filed a timely notice of appeal. He contends that the evidence is insufficient to sustain his convictions on the drug conspiracy and firearms charges and, thus, that the court erred in denying his renewed Rule 29 motion. In the event that we vacate those convictions, he seeks re-sentencing on his moonshining offenses, based on his assertion that the sixty-month prison terms imposed by the court exceeded the applicable Guidelines range. He concedes that, if his convictions (particularly his conviction for drug conspiracy) stand, any sentencing error is harmless and resentencing is not necessary. We address, in turn, Larry’s assertions with respect to, first, the sufficiency of the evidence and, second, his sentence.
II.
A
We review de novo the denial of a Rule 29 motion for a judgment of acquittal. *224 United States v. Ryan-Webster, 353 F.3d 353, 359 (4th Cir.2003). We must sustain a jury verdict ‘“if there is substantial evidence, taking the view most favorable to the Government, to support it.’ ” United States v. Burgos, 94 F.3d 849, 862 (4th Cir.1996) (en banc) (quoting Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942)). We have defined “substantial evidence” as “evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant’s guilt beyond a reasonable doubt.” Id. And we “remain cognizant of the fact that the jury, not the reviewing court, weighs the credibility of the evidence and resolves any conflicts in the evidence presented.” Id. (internal quotation marks and alteration omitted).
1.
On the drug conspiracy charge against Larry Aikens, the court instructed the jury that the prosecution was required to prove the following: that between July 2003 and October 6, 2003, an agreement was formed between two or more persons to manufacture and possess with intent to distribute a detectable quantity of marijuana; that Larry knew of the conspiracy; and that he knowingly and intentionally became a member thereof. See J.A. 652; cf. Burgos, 94 F.3d at 857 (“To prove conspiracy to possess cocaine base with intent to distribute, the Government must establish that: (1) an agreement to possess cocaine with intent to distribute existed between two or more persons; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily became a part of this conspiracy.”).[4] Importantly, “a conspiracy generally is proved by circumstantial evidence and the context in which the circumstantial evidence is adduced.” Burgos, 94 F.3d at 857.
Viewed in the light most favorable to the Government, the evidence presented to the jury in this matter permits a finding that, sometime between October 3 and the morning of October 5, 2003, Lewis Aikens and some other person harvested many of the plants in the marijuana patches in the Pisgah National Forest. During that time period, Lewis’s ATV was driven from Larry Aikens’s property up the Hickory Log Branch, and parked near the lowermost patch. At about 11 o’clock on the morning of October 5, 2003, Lewis was surprised by Forest Service officers. In the course of being “flushed” by the officers, Lewis dropped four duffel bags of freshly cut marijuana and fled through the woods, sustaining multiple cuts along the way and abandoning the ATV. The following morning, on October 6, 2003, Larry (himself a marijuana dealer, as evidenced by the bagged marijuana, scales, baggies, and firearms found on his property) accompanied Lewis to the area of the marijuana patches. Larry and Lewis had reached the parked ATV, where one of them was overheard stating, “I don’t see them,” indicating that they were looking for the officers who had “flushed” Lewis the previous day. The speaker then suggested, “Let’s go on up the trail,” showing that the ATV was not the intended final destination point. Larry and Lewis then continued walking up the trail, toward an access point for the site of the abandoned duffel bags of marijuana, until they were stopped by an officer and arrested. Larry and *225 then Lewis soon thereafter falsely denied that either one of them owned the ATV.[5] And Larry gave two different excuses as to why he and Lewis had been trekking through the area of the marijuana patches that day — first, that they were “just walking,” and, second, that they were walking and tracking bears.
Larry Aikens, in this appeal, concedes that there is a significant amount of circumstantial evidence linking his son Lewis to the marijuana patches, but contends that the evidence is insufficient to sustain his own conviction for drug conspiracy. In support of this contention, Larry asserts that the evidence fails to establish, inter alia, that he had ever been physically present in any of the marijuana patches, or that the marijuana found on his property had any relation to the marijuana being grown in those patches. He also insists that a reasonable fact finder could only conclude that, in accompanying Lewis to the area of the marijuana patches on the morning of their arrests, his purpose was innocent: to simply help Lewis retrieve his ATV, just as any father would help his son.
Unfortunately for Larry, however, “[cjircumstantial evidence sufficient to support a conspiracy conviction need not exclude every reasonable hypothesis of innocence, provided the summation of the evidence permits a conclusion of guilt beyond a reasonable doubt.” Burgos, 94 F.3d at 858. And “a variety of conduct,” apart from personally manufacturing or possessing the drugs in issue, “can constitute participation in a conspiracy sufficient to sustain a conviction.” Id. at 859 (recognizing “that participation may assume a myriad of ... forms, such as supplying firearms or purchasing money orders for coconspirators or permitting them to store narcotics and other contraband in one’s home, or purchasing plane tickets for co-conspirators” (internal citations omitted)).
Here, an agreement between Larry and Lewis to violate the federal drug laws is sufficiently established by evidence that Lewis was permitted by Larry to use his property to access the Hickory Log Branch leading to the area of the marijuana patches in the National Forest, and by evidence that Larry accompanied Lewis to that area on the morning of October 6, 2003, to retrieve the ATV and duffel bags of freshly harvested marijuana that Lewis had abandoned there the previous day. Indeed, a reasonable fact finder could disregard the theory that Larry was simply helping Lewis retrieve the ATV, because once Larry and Lewis reached the ATV, they continued walking further into the National Forest.
Moreover, Larry’s knowledge of the conspiracy, as well as his knowing and voluntary involvement in it, are sufficiently established by evidence of Larry’s conduct and guilty conscience. This evidence includes the following: that Larry was watching with Lewis for the officers who had earlier “flushed” Lewis from the area; that Larry and Lewis passed the ATV and walked toward an access point for the site where the duffel bags of marijuana had been dropped; that Larry falsely denied that he or Lewis owned the abandoned ATV; that Larry gave contradictory ex *226 cuses about why he and Lewis were on their trek; and that Larry had not innocently stumbled into a marijuana cultivation scheme, as he himself was a marijuana dealer. Accordingly, the district court did not err in denying Larry’s multiple requests for judgment of acquittal with respect to the drug conspiracy charge, and we affirm his conviction on that count.
2.
As for the firearms offense, the court instructed the jury that the prosecution was required to prove the following: that, as of October 6, 2003, Larry Aikens previously had been convicted of a crime punishable by a term of imprisonment exceeding one year; that he knowingly and intentionally possessed the thirty-one firearms identified in the indictment; and that this possession was in or affecting commerce, in that the firearms had been shipped and transported in interstate or foreign commerce. See J.A. 658; see also United States v. Langley, 62 F.3d 602, 606 (4th Cir.1995) (en banc). Larry contends that the Government did not introduce any evidence that the firearms had travelled in interstate or foreign commerce.
In order to prove the requisite nexus to interstate commerce, the prosecution was obliged to adduce evidence showing, for example, that one of the firearms at issue was possessed by Larry in North Carolina but manufactured in another state. See United States v. Crump, 120 F.3d 462, 466 & n. 2 (4th Cir.1997). Instead, the Government contended at trial that the jury should be allowed to rely on “reason and common sense” in making a factual determination on the interstate commerce element of the firearms charge. It concedes on appeal, however, that it “did not introduce evidence to prove the connection of [Larry] Aikens’ firearms to interstate commerce,” and that the firearms count thus “suffered a failure of proof.” Appellee’s Br. at 22. Accordingly, we are constrained to vacate Larry’s conviction on the firearms count and remand for its dismissal.
B.
Finally, Larry Aikens asserts that the sixty-month prison term imposed by the district court on each of the moonshining counts exceeds the applicable Guidelines range, which he contends is ten to sixteen months of imprisonment for those combined offenses. Larry acknowledges, however, that the prison terms for moonshining are to be served concurrently with the longer prison term imposed for drug conspiracy, i.e., the mandatory statutory minimum of 120 months of imprisonment. See 21 U.S.C. § 841(b)(1)(B). Larry therefore concedes that, if his conviction for drug conspiracy stands, resentencing on the moonshining counts is unnecessary. Because we have affirmed his drug conspiracy conviction, we agree that a sentencing error on the moonshining offenses, if any, is rendered harmless.
III.
Pursuant to the foregoing, we affirm Larry Aikens’s conviction for drug conspiracy and conclude that any error in his sentence for moonshining was harmless. We vacate his conviction on the firearms count and remand for its dismissal.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED

. Because Larry Aikens challenges the sufficiency of the evidence supporting his convictions, we recite and review the evidence in the light most favorable to the prosecution. See United States v. Burgos, 94 F.3d 849, 862 (4th Cir.1996) (en banc).

. During the search of Larry's property, officers also found and seized evidence supporting the two moonshining offenses to which he pleaded guilty.

. Citations herein to "J.A. _” refer to the contents of the Joint Appendix filed by the parties in this proceeding.

. The district court also instructed the jury that, if it found Larry Aikens to have been involved in a drug conspiracy, it was then to consider whether the conspiracy involved more than 100 marijuana plants, and whether "the involvement of the conspiracy with this amount of marijuana was in furtherance of the conspiracy and was either known to the defendant Larry Allen Aikens or was reasonably foreseeable to him.” J.A. 652-53.

. Our good dissenting colleague asserts that "Larry Aikens denied that the ATV belonged to him” (rather than to him or his son Lewis), see post at 19-20, and therefore concludes that Larry’s statement was true, see id. at 26. In our view, however, the record does not support this conclusion. Agent Davis testified that officers asked Larry, along with Lewis, whether the ATV "belonged to either one of them.” J.A. 163 (emphasis added). According to Davis, "Larry was the first one to indicate. He said no, and he shook his head and put it down.” Id. In other words, Larry stated and indicated that neither he nor Lewis owned the ATV — an assertion that was patently false.