**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 05-4895**

_____

UNITED STATES OF AMERICA,

                                        Plaintiff - Appellee,

        versus

DARRELL EUGENE DIGSBY,

                                        Defendant - Appellant.

_____

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Robert J. Conrad, Jr., District Judge.  (CR-04-304)

_____

Submitted:  June 5, 2006                Decided:  June 15, 2006

_____

Before TRAXLER and DUNCAN, Circuit Judges, and HAMILTON, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

Aaron E. Michel, Charlotte, North Carolina, for Appellant. Gretchen C. F. Shappert, United States Attorney, Jonathan A. Vogel, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Defendant-Appellant, Darrell Eugene Digsby appeals from the district court's judgment of conviction for one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). A review of the record, the parties' briefs and the joint appendix revealing no error, we affirm the conviction.

I.

Shortly after 2:00 a.m. on July 26, 2004, officers William Stanley Cook and Piotr Ignaczak of the Charlotte-Mecklenburg Police Department responded to a call to investigate gunshots fired near Tuckaseegee Road in Charlotte, North Carolina. As the officers were passing a residence at 1106 Pryor Street, a naked black male, later identified as Ronald Logan, flagged them down. Logan, who was bleeding from a head injury, told the officers that he had been in a bedroom of the residence with his girlfriend, later identified as Qunzina Dillard, when an individual unknown to him kicked in the bedroom door. The individual threatened to kill him and ordered him out of the residence. The individual struck Logan in the head with a weapon as Logan passed through the hallway and fired a shot into the air as Logan exited the residence.

As the officers approached the residence, several people exited through the front door onto the porch, screaming that a man was in the house with a gun. The police later identified two of

the people exiting the house as Ray Davis and Yolanda Larkin, both of whom resided at the home. Davis and Larkin requested that the officers enter the residence to remove the armed individual. Ignaczak instructed everyone to get off the porch.

Cook proceeded to the side of the residence. As Cook approached a door that opened into the kitchen, he observed Digsby open the door and begin to exit. Digsby held a gun in his right hand. Cook ordered Digsby to drop the weapon and get on the ground. Instead, Digsby retreated back through the door and locked it behind him. By this time, Ignaczak had joined Cook at the side of the residence.

Both officers returned to the front of the residence and entered through the open front door. The officers discovered Digsby in the hallway near the kitchen. They ordered him to get down on the floor, and Digsby complied. They then handcuffed and frisked him but found no weapon. Ignaczak led Digsby from the residence, leaving Cook and a supervisor to conduct a search. Cook subsequently found a Hi-Point .45 caliber handgun, consistent with the weapon he had seen in Digsby's possession at the side of the residence, underneath a bag of french fries in the kitchen freezer. Although the freezer was operational, the handgun was not cold when Cook found it. No other weapons were found in the residence. Subsequent analysis of the handgun revealed that it had been

manufactured in Ohio and, at some point, had been sold in South Carolina.

Following his indictment for felon in possession of a firearm, Digsby moved to suppress the handgun, arguing that he resided at 1106 Pryor Street, and that the entry into and search of his residence violated the Fourth and Fourteenth Amendments. The magistrate judge who conducted the suppression hearing concluded that the evidence did not support Digsby's residency claim. Instead, it established that Digsby was an intruder in the residence who lacked standing to contest the officers' entry into and search of the residence.

Prior to trial, Digsby moved to "bifurcate the trial or limit the evidence to the fact of a prior felony conviction without disclosing to the jury the specific offense or offense conduct." J.A. 13. The district court instructed Digsby that the crime charged consisted of two distinct elements, a prior felony conviction and possession of a firearm, and that, if he elected to stipulate to the felony conviction, the government would not be permitted to present evidence of the conviction. Otherwise, proof of the conviction became an essential element of the government's case. Digsby elected to stipulate to the felony conviction.

Just prior to jury selection, the venire of potential jurors accidentally may have seen Digsby and other defendants in custody as they were brought up from the holding cell. Digsby's counsel

expressed "some concern" about what the jurors "might have seen," though he noted that Digsby would not have been prejudiced by his attire because he was not dressed in orange. J.A. 105d-105e. The district court instructed Digsby that he could ask the jurors about the issue during voir-dire and offered to give a corrective instruction. Digsby declined both of these offers because of their potential to highlight what the jurors might have seen.

At the close of the government's case, Digsby moved for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. The district court denied the motion.

Digsby proposed the following jury instruction concerning the "in or affecting interstate or foreign commerce" element of a § 922(g)(1) violation:

> The term "in or affecting interstate or foreign commerce" means that the possession by the defendant must have occurred as part of interstate or foreign commerce or substantially affected interstate or foreign commerce. In other words, the possession of the firearm must be commercial or economic in nature and it must substantially affect interstate or foreign commerce. It does not include purely interstate commerce unless the activity has a substantial effect on interstate commerce.

J.A. 265c. The district court rejected this instruction. Instead, the district court instructed the jury as follows:

> The phrase "in or affecting commerce" includes commerce between anyplace in a state and anyplace outside of that state. The government may meet its burden of proof on the question of being in or affecting commerce by proving to you beyond a reasonable doubt that the firearm identified in the indictment at any time had traveled across a state boundary line.

J.A. 259.

At the close of the trial, the jury found Digsby guilty of the single count in the indictment. The district court entered a judgment of conviction and sentenced Digsby to 120 months imprisonment. Digsby now appeals his conviction.

## II.

Digsby claims that the district court (1) violated the Fourth Amendment by denying his motion to suppress the handgun, (2) violated the Due Process Clause of the Fifth Amendment by limiting the remedy for the possibility that the jury venire viewed Digsby in custody and shackles, (3) violated Rule 403 of the Federal Rules of Evidence by limiting the remedy for the criminal history information alleged in the indictment to a stipulation that Digsby had a prior felony conviction, (4) violated the Confrontation Clause of the Sixth Amendment by admitting hearsay evidence and (5) erred in rejecting his proposed jury instruction concerning the "in or affecting interstate or foreign commerce" element of a

§ 922(g)(1) violation.[1] We review each of these claims individually.

A.

Digsby first argues that the district court violated his Fourth Amendment right to be free from unreasonable search and seizure by denying his motion to suppress the handgun. When reviewing a district court's denial of a motion to suppress evidence, we review its factual findings for clear error and its legal conclusions de novo, construing the evidence in the light most favorable to the government. United States v. Perkins, 363 F.3d 317, 320 (4th Cir. 2004).

The district court properly denied Digsby's motion to suppress the handgun because he lacked standing to challenge the validity of the search. A defendant lacks standing to challenge the validity of a search unless he "has a legitimate expectation of privacy" in the location to be searched. Rakas v. Illinois, 439 U.S. 128, 143 (1978). The defendant bears the burden of establishing that

---

[1]Digsby also argues that, even if none of the district court's individual errors rise to the level of reversible error, the combination of those errors violated his due process rights under the cumulative error doctrine, and that the district court erred in denying his motion for judgment of acquittal. Because we find no error in the district court's rulings, we need not consider Digsby's cumulative error doctrine argument. Digsby fails to develop any argument, separate from his argument that the district court erred in denying his proposed jury instruction, concerning the denial of his motion for judgment of acquittal. Accordingly, Digsby has abandoned that claim. See Fed. R. App. P. 28(a)(9)(A); United States v. Smith, 441 F.3d 254, 274 (4th Cir. 2006).

expectation.  United States v. Kitchens, 114 F.3d 29, 31 (4th Cir. 1997).  Here, the magistrate judge found, and the district court agreed, that Digsby was an intruder, not a resident or a guest, in the home where the search occurred.  That finding is not clearly erroneous.  As an intruder, Digsby had no legitimate expectation of privacy in the residence.

## B.

Digsby next argues that the district court violated the Due Process Clause of the Fifth Amendment by limiting the remedy for the possibility that the jury venire viewed Digsby in custody and shackles to jury selection voir dire.  This argument lacks any merit.  Although the Fifth Amendment prohibits the use of physical restraints visible to the jury unless, in the trial court's discretion, interests such as physical security, escape prevention or courtroom decorum make such measures necessary; Deck v. Missouri, 544 U.S. 622, 628-29 (2005); the record contains no indication either that the jury actually saw Digsby in shackles or that the district court understood Digsby's issue to be the possibility that the jury venire had seen him in shackles. Digsby's counsel did not refer to shackles or physical restraints when he raised his "concern" to the district court.  Moreover, he did not object when the district court offered either to permit voir dire on what the potential jurors had seen or to instruct the

jurors "that merely because someone is detained for trial is nothing that they can consider." J.A. 105f. He merely declined both of the remedies for fear that they might do more harm than good. On this record, the district court committed no error.

C.

Digsby next argues that the district court violated Rule 403 of the Federal Rules of Evidence by denying his motion to bifurcate the trial and limiting the remedy for the criminal history information alleged in the indictment to a stipulation that Digsby had a prior felony conviction. We review the district court's rulings on bifurcation for abuse of discretion. See United States v. King, 582 F.2d 888, 890 (4th Cir. 1978). We also review the district court's application of Rule 403 for abuse of discretion, "examin[ing] the evidence in the 'light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect.'" United States v. Love, 134 F.3d 595, 603 (4th Cir. 1998) (quoting United States v. Simpson, 910 F.2d 154, 157 (4th Cir. 1990)).

The district court did not abuse its discretion by requiring that Digsby stipulate to a prior felony conviction in order to prevent the government from presenting evidence of the conviction. This approach conforms with the approach approved by the Supreme Court in Old Chief v. United States, 519 U.S. 172 (1997). The

holding in that case permits a defendant, by stipulating to a prior felony conviction, to avoid the potential prejudice associated with the government's efforts to prove the conviction.  Id. at 190-92.  In effect, Digsby received what he requested, the evidence was limited "to the fact of a prior felony conviction without disclosing to the jury the specific offense or offense conduct." J.A. 13.  He was not entitled to prevent the government from proving the prior felony conviction element of the § 922(g)(1) violation without stipulating to that element.

D.

Digsby next argues that the district court violated the Confrontation Clause of the Sixth Amendment by admitting hearsay evidence.  Specifically, Digsby argues that the statements admitted by the district court constitute the type of testimonial statements that the Supreme Court held, in Crawford v. Washington, 541 U.S. 36 (2004), violate the Sixth Amendment.  We disagree.  None of the statements identified by Digsby as inadmissible hearsay[2] implicate

---

[2]Digsby alleges four instances of inadmissible hearsay: (1) Cook's testimony concerning what Logan reported to him when he arrived at the residence; (2) Cook's testimony concerning Ignaczak's instructions to individuals at the residence to get off the porch; (3) Cook's testimony concerning what the individuals on the porch were saying about the intruder in the residence when he approached the porch; and (4) the testimony of the government's expert concerning what he had been told about the make and model of the handgun found in the freezer.

the concerns raised in <u>Crawford</u>, and the district court properly applied the Federal Rules of Evidence in admitting the statements.

E.

Finally, Digsby argues that the district court erred in rejecting his proposed jury instruction concerning the "in or affecting interstate or foreign commerce" element of a § 922(g)(1) violation. Again, we disagree. As noted in Digsby's brief to this court, the jury instruction given by the district court reflects the law of this circuit. Moreover, this court has repeatedly rejected the argument advanced by Digsby that <u>United States v. Lopez</u>, 514 U.S. 549 (1995) dictates a different result. <u>See</u> <u>e.g.</u>, <u>United States v. Gallimore</u>, 247 F.3d 134, 138 (4th Cir. 2001); <u>United States v. Nathan</u>, 202 F.3d 230, 234 (4th Cir. 2000); <u>United States v. Crump</u>, 120 F.3d 462, 466 n.2 (4th Cir. 1997). We continue to reject that argument.

III.

For the foregoing reasons, we affirm the judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and argument would not aid the decisional process.

<u>AFFIRMED</u>