UNITED STATES of America, Appellee,

v.

David Earl FLEMING, Appellant.

No. 84–5045.

United States Court of Appeals,
Fourth Circuit.

Argued June 7, 1984.

Decided July 17, 1984.

Rehearing and Rehearing In Banc
Denied Aug. 31, 1984.

Steven A. Merrill, Fairfax, Va., for appellant.

Robert J. Cynkar, Asst. U.S. Atty., Alexandria, Va., (Elsie L. Munsell, U.S. Atty., Alexandria, Va., on brief), for appellee.

Before WINTER, Chief Judge, PHILLIPS, Circuit Judge, and HALLANAN,* District Judge.

HARRISON L. WINTER, Chief Judge:

This case requires us to decide whether a non-purposeful vehicular homicide can ever amount to murder. We conclude that it can.

### I.

Defendant David Earl Fleming was convicted of second-degree murder, in violation of 18 U.S.C. § 1111,[1] in the death of Margaret Jacobsen Haley. Mrs. Haley was the driver of an automobile with which an automobile operated by the defendant collided when defendant lost control while traveling at a high rate of speed.

---

* Honorable Elizabeth V. Hallanan, United States District Judge for the Southern District of West Virginia, sitting by designation.

1. 18 U.S.C. § 1111(a) provides:

Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, rape, burglary, or robbery; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree.

Any other murder is murder in the second degree.

Fleming's car was observed at about 3:00 p.m. on June 15, 1983, traveling southbound on the George Washington Memorial Parkway in northern Virginia at speeds variously estimated by witnesses as between 70 and 100 miles per hour. The speed limit on the Parkway is, at most points, 45 miles per hour. Fleming several times directed his southbound car into the northbound lanes of the Parkway in order to avoid traffic congestion in the southbound lanes. Northbound traffic had to move out of his way in order to avoid a head-on collision. At one point, a pursuing police officer observed Fleming steer his car into the northbound lanes, which were separated from the southbound lanes at that point and for a distance of three-tenths of a mile by a raised concrete median, and drive in the northbound lanes, still at a high rate of speed, for the entire length of the median. At two other points, Fleming traveled in northbound lanes that were separated from the southbound lanes by medians.

Approximately six miles from where his car was first observed traveling at excessive speed, Fleming lost control of it on a sharp curve. The car slid across the northbound lanes, striking the curb on the opposite side of the highway. After striking the curb, Fleming's car straightened out and at that moment struck the car driven by Mrs. Haley that was coming in the opposite direction. Fleming's car at the moment of impact was estimated by witnesses to have been traveling 70 to 80 miles per hour; the speed limit at that point on the Parkway was 30 miles per hour. Mrs. Haley received multiple severe injuries and died before she could be extricated from her car.

Fleming was pulled from the wreckage of his car and transported to a Washington hospital for treatment. His blood alcohol level was there tested at .315 percent.

Fleming was indicted by a grand jury on a charge of second-degree murder and a number of other charges which are not relevant to this appeal. He was tried before a jury on the murder charge and convicted.

## II.

Defendant maintains that the facts of the case cannot support a verdict of murder. Particularly, defendant contends that the facts are inadequate to establish the existence of malice aforethought, and thus that he should have been convicted of manslaughter at most.

Malice aforethought, as provided in 18 U.S.C. § 1111(a), is the distinguishing characteristic which, when present, makes a homicide murder rather than manslaughter. *See Stevenson v. United States*, 162 U.S. 313, 320, 16 S.Ct. 839, 841, 40 L.Ed. 980 (1896).[2] Whether malice is present or absent must be inferred by the jury from the whole facts and circumstances surrounding the killing. *Brown v. United States*, 159 U.S. 100, 103, 16 S.Ct. 29, 30, 40 L.Ed. 90 (1894).

Proof of the existence of malice does not require a showing that the accused harbored hatred or ill will against the victim or others. *See United States v. Celestine*, 510 F.2d 457, 459 (9 Cir.1975). Neither does it require proof of an intent to kill or injure. *See, e.g., United States v. Shaw*, 701 F.2d 367, 392 n.20 (5 Cir.1983); *United States v. Black Elk*, 579 F.2d 49, 51 (8 Cir.1978); LaFave & Scott, *Criminal Law* 541 (1972). Malice may be established by evidence of conduct which is "reckless and wanton and a gross deviation from a reasonable standard of care, of such a nature that a jury is warranted in inferring

---

**2.** Malice aforethought is a concept that originated with the common law and is used in 18 U.S.C. § 1111(a) in its common law sense. *See Stevenson, supra,* 162 U.S. at 320, 16 S.Ct. at 841. The statute's terms, since known to and derived from the common law, are referable to it for interpretation. *United States v. Pardee,* 368 F.2d 368, 374 (4 Cir.1966). Accordingly, we do not confine our consideration of the precedents to decisions of federal courts interpreting the federal statute, but rather consider other sources which may shed light on the issues of this case.

that defendant was aware of a serious risk of death or serious bodily harm." *Black Elk, supra,* 579 F.2d at 51, quoting, in the context of a criminal action under § 1111(a), *United States v. Cox,* 509 F.2d 390, 392 (D.C.Cir.1974). To support a conviction for murder, the government need only have proved that defendant intended to operate his car in the manner in which he did with a heart that was without regard for the life and safety of others. *Shaw, supra,* 701 F.2d at 392 n. 20 (dicta). *See also United States v. Hinkle,* 487 F.2d 1205, 1207 (D.C.Cir.1973).[3]

▬ We conclude that the evidence regarding defendant's conduct was adequate to sustain a finding by the jury that defendant acted with malice aforethought. It is urged upon us, however, that a verdict of murder in this case should be precluded by the existence of a statute defining and proscribing involuntary manslaughter, 18 U.S.C. § 1112(a).[4] Defendant maintains that vehicular homicide where no purpose on the part of the accused to have caused death or injury has been shown should result only in conviction of involuntary manslaughter. Otherwise, defendant argues, all drunk driving homicides and many reckless driving ones will be prosecutable as murder. We are not persuaded by the argument.

▬ The difference between malice, which will support conviction for murder, and gross negligence, which will permit of conviction only for manslaughter, is one of degree rather than kind. *See, e.g., United States v. Dixon,* 419 F.2d 288, 292–293 (D.C.Cir.1969) (Leventhal, J., concurring) (difference between murder and manslaughter lies in the quality of the accused's awareness of the risk). *See also* Holmes, *The Common Law* 59 (1881) (The difference between murder and manslaughter lies "in the degree of danger attaching to the act in the given state of facts.") In the vast majority of vehicular homicides, the accused has not exhibited such wanton and reckless disregard for human life as to indicate the presence of malice on his part. In the present case, however, the facts show a deviation from established standards of regard for life and the safety of others that is markedly different in degree from that found in most vehicular homicides. In the average drunk driving homicide, there is no proof that the driver has acted while intoxicated with the purpose of wantonly and intentionally putting the lives of others in danger. Rather, his driving abilities were so impaired that he recklessly put others in danger simply by being on the road and attempting to do the things that any driver would do. In the present case, however, danger did not arise only by defendant's determining to drive while drunk. Rather, in addition to being intoxicated while driving, defendant drove in a manner that could be taken to indicate depraved disregard of human life, *particularly* in light of the fact that *because he was drunk* his reckless behavior was all the more dangerous.

### III.

▬ Defendant also challenges his conviction on the grounds that the district court committed error in its instructions to

---

3. We note that, even assuming that subjective awareness of the risk is required to establish murder where the killing resulted from reckless conduct, an exception to the requirement of subjective awareness of risk is made where lack of such awareness is attributable solely to voluntary drunkenness. *See, e.g., State v. Trott,* 190 N.C. 674, 130 S.E. 627 (1925); Model Penal Code § 2.08(2) (Tent. Draft No. 9, 1959) ("When recklessness establishes an element of the offense, if the actor, due to self-induced intoxication, is unaware of a risk of which he would have been aware had he been sober, such unawareness is immaterial.") Defendant's state of voluntary intoxication thus would not have been relevant to whether the jury could have inferred from the circumstances of the crime that he was aware of the risk created by his conduct.

4. 18 U.S.C. § 1112(a) provides:

Manslaughter is the unlawful killing of a human being without malice. It is of two kinds:
Voluntary—Upon a sudden quarrel or heat of passion.
Involuntary—In the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death.

the jury. In view of our conclusions with regard to the adequacy of wanton and reckless behavior to support an inference of malice, we think that the district court's instructions on this subject were unexceptionable. Defendant also contends that the district court's response to the jury's request for reinstruction as to the distinction between murder and manslaughter confused the two crimes and now requires reversal. After a close reading of the challenged portion of the instructions, we are far from convinced that there was any failure of the district court in its definition of the crimes.[5] In any event, however, we must read the district court's instructions as a whole. *See United States v. Park,* 421 U.S. 658, 674, 95 S.Ct. 1903, 1912, 44 L.Ed.2d 489 (1975). In so doing, we are convinced that any confusion in this isolated portion of the instructions was not misleading "in the context of the overall charge." *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973).

■ Defendant also contends that the district court erred in admitting into evidence defendant's driving record which showed previous convictions for driving while intoxicated. The driving record would not have been admissible to show that defendant had a propensity to drive while drunk. Fed.R.Evid. 404(b). However, the driving record was relevant to establish that defendant had grounds to be aware of the risk his drinking and driving while intoxicated presented to others. It thus was properly admitted.

AFFIRMED.

---

**5.** The district court stated that the negligence necessary to establish manslaughter "must amount to gross negligence, that is conduct which is a *wanton and reckless disregard for human life.*" A few words later, the court told the jury that the distinguishing mark of manslaughter was that "there is nothing about [the killing] that shows you that there was intent in the mind to do acts that amount to *wanton and reckless disregard for human life.*" (Emphasis added in both quotations.) Though judges have suggested that clarity of the definitions of murder and manslaughter is best maintained by restricting use of the term "wanton" to the former and avoiding any reference to "negligence" with regard to the latter, *see Dixon, supra,* 419 F.2d at 293 and 294 n.9 (Leventhal, J., concurring), use of the phrase "wanton and reckless disregard for human life" in the definition of both murder and manslaughter has been common in modern jurisprudence. *Compare Pardee, supra,* 368 F.2d at 374 ("gross negligence"

that is necessary element of manslaughter "is to be defined as exacting proof of a wanton or reckless disregard for human life") *with, e.g., United States v. Lucas,* 447 F.2d 338, 340 (D.C. Cir.1971) ("... evidence demonstrating that an act was 'done so recklessly or wantonly as to manifest depravity of mind and disregard of human life' satisfies the malice requirement for second degree murder.") The key point is that malice requires that the circumstances have been such that the jury could conclude that defendant's entering into the risk created by his conduct evidenced a depraved mind without regard for human life. The district court's instruction suggested, albeit with some lack of clarity, this characteristic of murder. The jury was told that if there was "nothing about [the killing] that shows .. *that there was intent* in the mind [of the accused] *to do acts that* amount to wanton and reckless *disregard* for *human life"* (emphasis added), then the killing could not be murder but at most manslaughter.