48 F.3d 1217
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Sherry Nicole NEAL-BROWNE, Defendant-Appellant.
 No. 94-5473.
 United States Court of Appeals, Fourth Circuit.
 Submitted Feb. 2, 1995.
Decided March 2, 1995.
 
 Rodolfo Cejas, II, Norfolk, VA, for appellant. Helen F. Fahey, United States Attorney, Harvey Lee Bryant, III, Assistant United States Attorney, Norfolk, VA, for appellee.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, WILKINS, Circuit Judge, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Following a jury trial, Appellant Sherry Nicole Neal-Browne was convicted of involuntary manslaughter. We affirm.
 
 I.
 
 2
 This case arises out of the tragic death of 14-month old Earl Fuqua, Jr. At the time of his death, Earl lived with his parents at the United States Naval Base in Guantanamo Bay, Cuba. He was a normal, healthy child. He died while in the care of Neal-Browne, who was responsible for looking after him while his parents were at work. Although she was not certified as a child care provider, Neal-Browne had a young child herself and provided day care for Earl and several other children in her home.
 
 
 3
 On June 30, 1993, the Fuquas dropped off Earl at Neal-Browne's home at about 7:15 a.m. When they came to pick him up in the afternoon, Neal-Browne advised them that Earl was sleeping upstairs. She went to retrieve him. When she brought the child downstairs, his body was limp and cold and it was obvious that he was not breathing. The parents rushed Earl to the hospital. Efforts to revive him were unsuccessful, and he was pronounced dead at 5:23 p.m.
 
 
 4
 Later that evening, Neal-Browne met with Navy investigators. According to the trial testimony of Special Agent Frank J. Soucy, III, Neal-Browne explained that Earl had fallen asleep in her arms around 3:00 p.m.; that she had taken him upstairs to the master bedroom and placed him in a crib; that she left the room but returned shortly and pulled a blanket up over him; and that she did not check on him again until his parents arrived.
 
 
 5
 Several months later, Neal-Browne agreed to be questioned a second time. Special Agents Terry D. Davidson and Roberto Rivera, who were present at the second interview, testified at trial. According to the agents, after several hours of interrogation Neal-Browne abruptly stated: "Allright. I did it." She then provided the following information.
 
 
 6
 Earl had been fussy throughout the day, causing Neal-Browne to become frustrated. At about 3:00, he fell asleep in her arms and she brought him upstairs to the bedroom, but he awoke when she put him in the crib. In an effort to get him back to sleep, she pressed his head into a pillow, face-down, for three to five minutes. She demonstrated the maneuver on Special Agent Davidson; he testified that the pressure was forcible. For a while, Earl resisted and struggled to get free. At some point, though, the child relaxed and Neal-Browne left the room. She did not check on him again until the Fuquas arrived almost two hours later.
 
 
 7
 Based on this information, and on the results of an autopsy, a Navy pathologist concluded that the cause of Earl's death was asphyxia by smothering. The pathologist testified at trial about his conclusions and was subject to extensive cross-examination. Neal-Browne testified at trial and denied any wrongdoing. She rejected the notion that she forcibly pushed the child's head into the pillow, stating that she merely laid him gently in the crib. She claimed that Special Agent Davidson was lying when he recounted her statements to the contrary.
 
 
 8
 The jury convicted Neal-Browne of involuntary manslaughter and the court sentenced her to 16 months' imprisonment. This appeal followed.*
 
 II.
 
 9
 Neal-Browne raises only one argument on appeal: that the evidence was insufficient to support her conviction. She claims that the government failed to adduce sufficient evidence that she acted with the necessary criminal intent. "In reviewing the sufficiency of the evidence to support a conviction, the relevant question is whether, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt." United States v. Madden, 38 F.3d 747, 751 (4th Cir.1994) (emphasis in original) (internal quotation marks omitted).
 
 
 10
 Under 18 U.S.C. Sec. 1112(a), involuntary manslaughter is "the unlawful killing of a human being without malice ... in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death." Involuntary manslaughter requires proof that a defendant acted with gross negligence. United States v. Fleming, 739 F.2d 945, 948-49 & n. 5 (4th Cir.1984), cert. denied, 469 U.S. 1193 (1985).
 
 
 11
 Gross negligence, in this context, is a level of culpability which, while "far more serious than ordinary tort negligence," still falls below "that most extreme recklessness and wantonness required for 'depraved heart' malice." United States v. Browner, 889 F.2d 549, 553 (5th Cir.1989); see also Fleming, 739 F.2d at 948 (distinction between malice and gross negligence "is one of degree rather than kind"). The gross negligence standard requires proof that a defendant has
 
 
 12
 acted with a wanton or reckless disregard for human life, knowing that his conduct was a threat to the lives of others or having knowledge of such circumstances as could enable him to foresee the peril to which his act might subject others.
 
 
 13
 United States v. F.D.L., 836 F.2d 1113, 1118 (8th Cir.1988); see also, e.g., United States v. Tresvant, 677 F.2d 1018, 1023 (4th Cir.1982).
 
 
 14
 In this case, the evidence was clearly sufficient to sustain Neal-Browne's conviction. According to the testimony of the investigators, Neal-Browne admitted that she forcibly pressed Earl's face into a pillow for three to five minutes. The jury could rationally have concluded that, in doing so, she acted with a reckless disregard for Earl's life and with knowledge that her conduct was a threat to his life. Pushing a small child's face into a pillow obviously creates a grave risk of harm.
 
 
 15
 To the extent Neal-Browne renews her argument that Agent Davidson provided false testimony, she ignores the rule that "this court is bound by the credibility choices of the jury." United States v. Saunders, 886 F.2d 56, 60 (4th Cir.1989) (internal quotation marks omitted). "Where there are conflicts in the testimony, it is for the jury and not the appellate court to weigh the evidence and judge the credibility of the witnesses." Tresvant, 677 F.2d at 1021.
 
 III.
 
 16
 For the reasons stated, the judgment of the district court is
 
 
 17
 AFFIRMED.
 
 
 
 *
 The parties agreed to submit the appeal on the briefs