**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                                                      No. 98-4483

NARKEY KEVAL TERRY,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CR-96-270-A)

Argued: January 28, 1999

Decided: May 28, 1999

Before LUTTIG, WILLIAMS, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** David Benjamin Smith, ENGLISH & SMITH, Alexandria, Virginia, for Appellant. William Graham Otis, Senior Litigation Counsel, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Helen F. Fahey, United States Attorney, Randy I. Bellows, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Narkey Terry was convicted in the United States District Court for the Eastern District of Virginia of, among other things, two counts of involuntary manslaughter. The district court, after departing upward fifteen levels, sentenced Terry to 120 months imprisonment. Terry appealed, and this Court vacated the sentence imposed and remanded for resentencing. See United States v. Terry, 142 F.3d 702 (4th Cir. 1998). On remand, the district court once again departed upward fifteen levels, this time after specifically finding that the danger created by Terry's reckless driving was so extraordinary that it removed the case from the heartland of the typical involuntary manslaughter case involving reckless conduct and that Terry acted with malice in the uncharged death of Billy Canipe. Finding no reversible error, we affirm.

I.

The underlying facts were recited by this Court on direct appeal, see United States v. Terry, 142 F.3d 702, 704-05 (4th Cir. 1998), and need only be briefly restated here. In the early morning of April 17, 1996, Terry and Canipe engaged in a high-speed race along the George Washington Memorial Parkway (G.W. Parkway). After racing for approximately eight miles, Terry's Jeep Cherokee hit Canipe's Chevrolet Beretta, causing the Beretta to spin across the median and into the southbound lanes, where it struck a Ford Taurus driven by George Smyth. The impact killed Mr. Smyth instantly. A section of Canipe's car, weighing close to 500 pounds, flew into the air and landed on the windshield of a Dodge Caravan driven by Nancy McBrien. Mrs. McBrien died within moments of the crash. Canipe was thrown from his car and sustained fatal injuries. Terry sustained a broken ankle and cuts and bruises to his face and chest.

2

The United States charged Terry with two counts of involuntary manslaughter (Nancy McBrien and George Smyth) in violation of 18 U.S.C.A. § 1112 (West 1984 & Supp. 1999); with one count of reckless driving in violation of 18 U.S.C.A. § 13 (West Supp. 1999) and Va. Code Ann. § 46.2-852 (Michie 1998); and with one count of carrying a concealed weapon in violation of 18 U.S.C.A.§ 13 and Va. Code Ann. § 18.2-308 (Michie Supp. 1998). Terry pleaded guilty to carrying a concealed weapon. Following a two-day jury trial, Terry was convicted on the remaining three counts.

As recited by this Court on direct appeal, Terry was sentenced as follows:

> Terry was sentenced pursuant to the involuntary manslaughter guideline. See U.S. Sentencing Guidelines Manual § 2A1.4 (1995). Due to his reckless driving, Terry's base offense level was set at fourteen. See U.S.S.G. § 2A1.4(a)(2). Because Terry was convicted on two counts of involuntary manslaughter, his base offense level was increased an additional two levels pursuant to the Guidelines' grouping rules. See U.S.S.G. § 3D1.4. With an adjusted offense level of 16 and a criminal history category of I, Terry's guideline range was 21-27 months. See U.S.S.G. Ch.5, Pt.A.

> Believing that [27] months would be "a wholly inadequate sentence given the severity of the defendant's conduct," (J.A. at 125), the district court determined that an upward departure was warranted. First, the district court departed upward eight levels to reflect the danger to the public created by Terry's reckless driving. See U.S.S.G. § 5K2.14, p.s. Next, the district court departed upward four levels to account for the additional death of Canipe. See U.S.S.G. § 5K2.1, p.s. Finally, the district court departed upward three levels to take into consideration the extreme psychological impact to the family members of the victims. See U.S.S.G. § 5K2.3, p.s. In total, the district court departed upward fifteen levels. With a total offense level of 31 and a criminal history category of I, Terry's guideline range was 108-135 months. See U.S.S.G. Ch.5, Pt.A. Terry

3

> was sentenced to 120 months imprisonment on the two involuntary manslaughter counts, a concurrent term of 12 months on the reckless driving charge, and a consecutive 6 month term of imprisonment on the concealed weapon charge.

Terry, 142 F.3d at 705 (footnote omitted).

On direct appeal, Terry argued only that the district court abused its discretion in departing upward by fifteen levels. This Court agreed, holding: (1) that the district court failed to determine whether the danger created by Terry's reckless driving was present to an exceptional degree or otherwise removed the case from the heartland of the typical involuntary manslaughter case involving reckless conduct, see id. at 706-07; (2) that if, on remand, the district court made such a determination, it must also determine the extent of its departure, see id. at 707; (3) that an upward departure based upon the death of Canipe was not precluded by Canipe's partial responsibility for the conduct that resulted in his death, see id. at 708; (4) that although the upward departure based upon Canipe's death was not an abuse of discretion, the extent of the departure was an abuse of discretion absent additional findings of fact, see id. at 708-09; (5) that the guideline authorizing an upward departure if a victim suffered psychological injury much more serious than that normally resulting from the commission of offense applied to both direct and indirect victims, see id. at 711-12; but (6) that family members of those killed as result of Terry's conduct were not victims of his offense, see id. at 712.

On remand, the district court once again sentenced Terry pursuant to the involuntary manslaughter guideline. See U.S. Sentencing Guidelines Manual § 2A1.4 (1995). Due to his reckless driving, Terry's base offense level was set at fourteen. See U.S.S.G. § 2A1.4(a)(2). Because Terry was convicted on two counts of involuntary manslaughter, his base offense level was increased an additional two levels pursuant to the Guidelines' grouping rules. See U.S.S.G. § 3D1.4. With an adjusted offense level of 16 and a criminal history category of I, Terry's guideline range was 21-27 months. See U.S.S.G. Ch.5, Pt.A.

Still believing that 27 months would be a wholly inadequate sentence given the severity of Terry's conduct, the Government argued

4

that an upward departure was warranted. The district court agreed, and departed upward on two bases: (1) § 5K2.14, p.s. (danger to the public); and (2) § 5K2.1, p.s. (death). The district court justified its departure under § 5K2.14, p.s. by specifically finding that Terry's reckless driving was so extraordinary that it was outside the "heartland" of situations encompassed by the involuntary manslaughter guideline. The district court justified its departure under § 5K2.1, p.s. by finding that Terry acted with malice in the uncharged death of Canipe. Based on the aforementioned grounds, the district court departed upward fifteen levels.

With a total offense level of 31 and a criminal history category of I, Terry's guideline range was 108-135 months. See U.S.S.G. Ch.5, Pt.A. Terry was once again sentenced to 120 months imprisonment on the two involuntary manslaughter counts. On appeal after remand, Terry once again argues only that the district court abused its discretion in departing upward by fifteen levels.

II.

A sentencing court may depart from the applicable guideline range where "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." 18 U.S.C.A. § 3553(b) (West Supp. 1999). As a result, if a factor has been forbidden by the Commission, "the sentencing court cannot use it as a basis for departure." Koon v. United States, 116 S. Ct. 2035, 2045 (1996). If a factor is one upon which the Commission encourages departure, and it is not taken into account by the applicable guideline, a court may exercise its discretion and depart on that basis. See id. If an encouraged factor is taken into account in the applicable guideline, or if a factor is a discouraged one, the departure is permissible "only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." Id. Finally, "[i]f a factor is unmentioned in the Guidelines, the court must, after considering the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole, decide whether it is sufficient to take the case out of the Guidelines' heartland." Id. (internal quotation marks and citation omitted). Here, the district

5

court relied upon two separate encouraged factors in departing upward a total of fifteen levels. We address each departure in turn.

A.

Section 5K2.14 provides: "If national security, public health, or safety was significantly endangered, the court may increase the sentence above the guideline range to reflect the nature and circumstances of the offense." U.S.S.G. § 5K2.14, p.s. Here, the district court departed upward under § 5K2.14, finding that the public's welfare and safety were significantly endangered during Terry's protracted reckless driving.

Because Terry's reckless driving was taken into account by the guideline under which he was sentenced, the district court may only depart under § 5K2.14 if the conduct "is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." Koon , 116 S. Ct. at 2045. On remand, the district court recognized that § 2A1.4 accounted for reckless driving, see United States v. Barber, 119 F.3d 276, 282 (4th Cir.) (en banc), cert. denied, 118 S. Ct. 457 (1997), and specifically found that Terry's reckless driving was so extraordinary that it was outside the "heartland" of situations encompassed by the applicable guideline.[1] We agree. As this Court noted on direct appeal:

_____

[1] The district court's findings are, in part, as follows:

> [T]here was excessive speed in the 70-to-80-mile-an-hour range, but more than speed, it's the combination of speed, the nature of the driving, the cat-and-mouse type of driving . . . on a scenic highway . . . where there is [no] room for error. There are very narrow, if any, shoulders along the parkway.

> The medians are not the kind of medians that are able to adequately protect cars from problems on the opposite side of the road. It's a road that twists a great deal. It's a road that has ups and downs, and so it is a very dangerous place for this kind of behavior.

> In addition, this was at the beginning of rush hour. . . .

> But the fact that is most unique about this case and, frankly, is not present in . . . other cases is that this case involved intentional reckless driving. . . .

6

> Terry engaged in a road duel on a scenic parkway not designed for high-speed driving. The high-speed duel was variously described by eyewitnesses as a game of "cat-and-mouse," "tag," and "chicken." We doubt that such conduct is typical of reckless driving cases.

Terry, 142 F.3d at 706. Accordingly, the district court did not abuse its discretion in departing pursuant to § 5K2.14, p.s.

Although the district court did not abuse its discretion in departing pursuant to § 5K2.14, p.s., we note that it failed to state the extent of its departure under § 5K2.14, p.s. In fact, when the district court departed by fifteen levels, it failed to state how many levels were attributable to § 5K2.14, p.s. and how many were attributable to § 5K2.1, p.s. At the original sentencing hearing, the district court departed under § 5K2.14, p.s. by eight levels. On direct appeal, this Court specifically held that "[i]f, on remand, the district court determines that an upward departure is warranted, it must also determine the extent of its departure." Id. at 707 (emphasis added). Thus, the district court's failure to determine the extent of its departure under § 5K2.14, p.s. was an abuse of discretion. Nevertheless, on direct appeal we suggested (and now hold) that at least a two-level increase would be appropriate under § 5K2.14, p.s. when, as the district court correctly found here, such an upward departure is warranted. See Terry, 142 F.3d at 707 & n.5. Because the remaining thirteen-level increase may be supported for the reasons stated below, the district court's failure to determine how many levels were attributable to each departure was harmless.

_____

> [W]e now have this absolutely deadly situation running along for at least 8 miles on the G.W. Parkway, creating a significant threat to the safety of every other driver on that road, as well as to the two drivers engaged in the conduct.

> If ever there were a factual situation that fell outside of the heartland for involuntary manslaughter by use of a vehicle, this is certainly the case.

(J.A. at 71-73.)

B.

"If death resulted, the court may increase the sentence above the authorized guideline range." U.S.S.G. § 5K2.1, p.s. Although the deaths of Mr. Smyth and Mrs. McBrien were taken into account in the applicable guideline, i.e., § 2A1.4(a)(2) (involuntary manslaughter), the district court determined that an upward departure under § 5K2.1, p.s. was appropriate in light of the additional death of Canipe. On direct appeal, this Court agreed that, although Canipe was also responsible for the aggressive driving behavior that led to his death, his death warranted a departure from the authorized guideline range. See Terry, 142 F.3d at 708. Nevertheless, this Court held that the district court abused its discretion in departing by four levels because it failed to consider any of the factors set forth by the sentencing guidelines for determining the extent of a departure under § 5K2.1, p.s.**2** See id. at 708-09.

On remand, the district court made findings as to the factors set forth in § 5K2.1, p.s. In particular, the district court found that Terry acted with malice in the death of Canipe. As a result, the district court concluded that Terry should be sentenced by analogy to the second-degree murder guideline, which, the district court correctly noted, provides for a base offense level of 33. See U.S.S.G. § 2A1.2. After concluding that an offense level of 33 would be too high in this case, the district court decided, as noted above, to set Terry's offense level at 31.

On appeal, Terry faults the district court on four points: (1) that it erred in finding that he acted with malice; (2) that it was improper to base the extent of the departure on the guideline for second-degree murder because he was not charged with or convicted of that offense; (3) that malice must be established beyond a reasonable doubt; and (4) that the district court failed to take into account Canipe's role in the offense. We address each argument in turn.

_____

**2** These factors include: (1) the defendant's state of mind, (2) whether the danger posed by the defendant's misconduct was extreme, and (3) whether the defendant knowingly risked the death or serious injury of others.

8

1.

Terry first contends that the district court erred in finding that he acted with malice and, therefore, in determining the extent of the upward departure by analogy to the second-degree murder guideline. For the reasons that follow, we disagree. In United States v. Fleming, 739 F.2d 945 (4th Cir. 1984), we affirmed the jury's finding that the defendant acted with malice in a case bearing a striking similarity to the instant one. The defendant in Fleming, driving approximately 80 miles per hour on the G.W. Parkway, lost control of his car on a sharp curve. The car slid across the median and into the southbound lanes, where it struck a car driven by Margaret Haley. Mrs. Haley died before she could be removed from her car. The defendant was subsequently convicted of second-degree murder. See id. at 947. In affirming the defendant's conviction, we noted the following:

> Proof of the existence of malice does not require a showing that the accused harbored hatred or ill will against the victim or others. Neither does it require proof of an intent to kill or injure. Malice may be established by evidence of conduct which is reckless and wanton and a gross deviation from a reasonable standard of care, of such a nature that a jury is warranted in inferring that defendant was aware of a serious risk of death or serious bodily harm. To support a conviction for [second-degree] murder, the government need only have proved that defendant intended to operate his car in the manner in which he did with a heart that was without regard for the life and safety of others.

Id. at 947-48 (citations and internal quotation marks omitted). Here, the evidence supports the district court's finding that Terry displayed a wanton disregard for the life and safety of Canipe. As a result, we do not believe that the district court erred in finding, by a preponderance of the evidence, that Terry acted with malice.

2.

Next, Terry argues that the district court erred in departing upward because the district court, in effect, tried and sentenced him for second-degree murder, a crime for which he has not been convicted.

9

Again, we disagree. The death of Canipe was related to and resulted from Terry's reckless driving. As the guidelines make clear, a defendant's sentence may be increased based upon relevant conduct, see U.S.S.G. § 1B1.3, including conduct for which the defendant was not convicted, see United States v. Barber, 119 F.3d 276, 283-84 (4th Cir.) (en banc) (noting that "the court may consider, without limitation, any information concerning the . . . conduct of the defendant," including "dismissed, uncharged, or [even] acquitted conduct"), cert. denied, 118 S. Ct. 457 (1997). Indeed, the sentencing guidelines encourage departure above the authorized guideline range where an uncharged death occurs as a result of the offense of conviction. See U.S.S.G. § 5K2.1, p.s. In any event, this Court has already held -- on direct appeal -- "that Canipe's death may provide the basis for an upward departure." Terry, 142 F.3d at 708. Thus, the propriety of the departure in question cannot be challenged on the ground that Terry was not charged with or convicted of second-degree murder.

3.

Next, Terry argues that the departure was so substantial that the facts supporting it had to be established beyond a reasonable doubt. We disagree. This Court has never required that facts at sentencing be established by more than a preponderance of the evidence. Indeed, in United States v. Melton, 970 F.2d 1328 (4th Cir. 1992), this Court specifically held that "proof beyond a reasonable doubt [is not required]. A preponderance of the evidence will suffice for sentencing purposes." Id. at 1331-32; see also United States v. Powell, 886 F.2d 81, 85 (4th Cir. 1989) (holding that, in order to satisfy due process, findings made at sentencing need only be based upon a preponderance of the evidence).

4.

Finally, Terry argues that the district court failed to take into account Canipe's role in the offense as allowed by § 5K2.10, p.s. A discretionary refusal to depart, however, is not reviewable unless the district court was unaware of or mistaken about its authority to depart. See United States v. Burgos, 94 F.3d 849, 876 (4th Cir. 1996) (en banc). There is no indication in the record that the district court was

10

unaware that it could depart to reflect Canipe's role in his own death.**3** Accordingly, we are without authority to review this claim.

III.

For the foregoing reasons, Terry's sentence is affirmed.

<u>AFFIRMED</u>

_____

**3** As this Court noted on direct appeal, "[a]bsent the upward departure pursuant to § 5K2.1, p.s., Terry's sentence would not have taken into account the additional death of Canipe." <u>United States v. Terry</u>, 142 F.3d 702, 708 n.8 (4th Cir. 1998). Thus, the very potential for a downward departure under § 5K2.10, p.s. in this case arose only as a result of the upward departure under § 5K2.1, p.s. In such a case, rather than departing pursuant to both § 5K2.1, p.s. and § 5K2.10, p.s, the better approach would be simply to reduce the extent of the departure under § 5K2.1, p.s. in recognition of the victim's role in the offense. <u>See Terry</u>, 142 F.3d at 708 n.8 (noting that a victim's "role in the offense may limit the extent of the upward departure"). To the extent Terry challenges the extent of the district court's departure under § 5K2.1, p.s., rather than the district court's failure to depart under § 5K2.10, p.s., we find no abuse of discretion. Canipe's role in the offense was taken into account by the district court. As noted above, had Terry been convicted of Canipe's murder, his base offense level would have been 33. <u>See</u> U.S.S.G. § 2A1.2. By departing upward thirteen levels under § 5K2.1, p.s., Terry's total offense level was only 29. Thus, although the district court did not specifically cite § 5K2.10, p.s., Canipe's role in the offense was taken into account by the district court when it limited the extent of its departure under § 5K2.1, p.s.

11