Certiorari dismissed, November 30, 2007

**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 06-4970

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

MUTTAQIN F. ABDULLAH, a/k/a King, a/k/a
Clayton Montray Pinckney,

Defendant - Appellant.

Appeal from the United States District Court for the District of
South Carolina, at Columbia.  Margaret B. Seymour, District Judge.
(3:05-cr-00014-MBS-AL)

Submitted:  June 29, 2007                Decided:  July 13, 2007

Before MICHAEL and DUNCAN, Circuit Judges, and HAMILTON, Senior
Circuit Judge.

Affirmed by unpublished per curiam opinion.

W. Michael Duncan, AUSTIN, LEWIS & ROGERS, P.A., Columbia, South
Carolina, for Appellant.   Reginald I. Lloyd, United States
Attorney, C. Todd Hagins, Robert F. Daley, Jr., Assistant United
States Attorneys, Columbia, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Mattaqin F. Abdullah appeals his conviction and life sentence imposed for being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C.A. §§ 922(g)(1), 924(a)(2), 924(e)(1) (West 2000 & Supp. 2007). On appeal, Abdullah argues that the district court erred in denying a motion for a mistrial after a Government witness briefly testified to a subject prohibited by an in limine ruling; erred in applying a first degree murder cross reference at sentencing when the jury did not find facts of murder; and erred in applying the first degree murder cross reference and finding that the murder was premeditated. Finding no error, we affirm.

On March 14, 2004, officers from the Sumter, South Carolina, Sheriff's Department responded to a report of shots fired at the Lion's Pit Nightclub. Abdullah was a bouncer employed by the club that night to provide security during a concert. Abdullah previously worked at the Lion's Pit on several occasions. Abdullah's counsel filed a motion in limine, which was granted by the court in part, to limit evidence regarding the shootings at trial. The court ruled that the Government may discuss "the pointing and presenting of a firearm" with regard to the charge, but that "no testimony or other evidence regarding the alleged murder or attempted murder on March 14, 2004, will be allowed." (J.A. 44-45).

- 2 -

The club closed in the early morning hours of March 14, 2004. It was customary for patrons at the club to sit in their vehicles in the parking lot waiting to leave. As they waited, they discharged celebratory gunfire into the air. The shots were not fired at the club. Abdullah testified that he had seen and heard gun shots while the club closed on previous occasions when he worked there.

The bouncers exited the club and stood by the doors so that no one could re-enter. Abdullah became agitated with the gunfire and said, "Man, they playing around, they are shooting in the air. I'm going to shoot for real." (J.A. 236). He also said, "I'm not going to shoot in the air, I'm going to shoot at somebody." (J.A. 123). While the patrons were shooting in the air, a bouncer went to his car to retrieve a handgun. Tommy Boyd testified that Abdullah told the bouncer, "Give me the gun . . . [j]ust give me the gun. . . . I know what to do." (J.A. 121). The bouncer gave Abdullah the firearm. As he did so, another bouncer, Coral Scott, became involved in an altercation with a patron. No firearms or weapons were involved. Thurston Lane, another bouncer, got between Scott and the patron. Scott then heard gunfire, looked book, and saw Abdullah firing the shots. Tommy Boyd and Thurston Lane confirmed that they observed Abdullah fire into a crowd of approximately forty to fifty people from twenty-five to thirty feet away. Boyd testified that Abdullah did not begin

- 3 -

shooting until approximately three to four minutes after the patrons stopped shooting in the air. Abdullah fired approximately eight or nine times to his left and right. One bullet hit David Way on the back of the head and exited through his forehead. He was pronounced dead at Toumey Hospital. Merrill McBride was also injured by a bullet striking his left side.

Lane testified that, after the shooting, he observed Abdullah return inside the club. Lane followed Abdullah and saw him enter the restroom. Abdullah later rejoined the group of bouncers who sat in front of the club waiting to be paid. Lane informed officers arriving on the scene that Abdullah was the shooter and directed them to the restroom Abdullah entered after the shooting.

Officers recovered a Taurus .45 caliber semi-automatic pistol from a hole in the restroom's ceiling. The firearm was loaded with six unfired Federal brand .45 caliber cartridges. Abdullah was arrested based on witness statements. Abdullah was searched and a .45 caliber Federal brand cartridge was found in his jacket pocket. Abdullah's fingerprint was found on the firearm's magazine. Both parties stipulated that David Way's "entrance wound was consistent with being caused by a large caliber bullet, consistent with either a .45 caliber bullet, .40 caliber bullet, or 10 millimeter bullet." In addition, both parties stipulated that

Way died due to "massive cerebral brain damage and hemorrhaging due to a gunshot wound to the back of the head." (J.A. 592).

Despite the Government's warning on the in limine issue, witness Coral Scott testified on direct examination that after the shootings he ran backwards to the club's door "and that's when people came out screaming, 'Somebody has been shot.'" (J.A. 176). Abdullah's counsel moved for a mistrial based on the witness's statement that someone had been shot. The Government argued that the witness's statement was that someone else said that someone had been shot, but was not direct testimony that someone was shot by Abdullah. Abdullah's counsel declined a curative instruction, because he thought it would draw more attention to the testimony, and instead stated that a mistrial was the only remedy. The court denied Abdullah's motion for a mistrial.

Abdullah and his counsel had an ex parte discussion with the court regarding whether Abdullah would testify. Counsel advised Abdullah not to testify; however, Abdullah decided to exercise his right. The court and counsel informed Abdullah that his testimony would be in the narrative form, that he was also bound by the court's in limine ruling, and that if he opened the door to the murder and injury, then the Government could pursue testimony about it.

Abdullah testified that he was outside in the parking lot when the club cleared out, but that he returned inside when he

heard the patrons' gunfire. He testified that he borrowed a jacket from another bouncer, and he did not know that there was ammunition in the jacket pocket. He testified that the crowd was very emotional and stated that "their home boy had been shot and one of the bouncers was accused of it in some way." (J.A. 547). Abdullah's testimony was that following the commotion regarding David Way's murder, someone came up to him and told him to check the bathroom because a toilet was broken. During cross-examination, Abdullah again denied firing shots or handling the firearm or ammunition.

Abdullah first argues that the district court erred in denying a mistrial based on Scott's testimony, because it was in violation of the court's ruling to exclude testimony about the murder and injury and no remedy short of a mistrial would provide him with a fair trial. He argues that he was compelled to testify that he was innocent of the shooting by the court's failure to grant a mistrial. The Government maintains that the remark was fleeting, Abdullah was not coerced into testifying, and no undue prejudice resulted from the remark.

We review the denial of a motion for a mistrial for an abuse of discretion. See United States v. Dorlouis, 107 F.3d 248, 257 (4th Cir. 1997). "In order for the trial court's ruling to constitute such an abuse of discretion, the defendant must show prejudice; no prejudice exists, however, if the jury could make

- 6 -

individual guilt determinations by following the court's cautionary instructions." United States v. Dorsey, 45 F.3d 809, 817 (4th Cir. 1995) (internal citation omitted).

We conclude that the Government witness's unexpected statement that patrons at the club said someone had been shot did not require a mistrial. The witness's statement was brief and isolated and was not purposely elicited by the Government. Moreover, the district court would have given an immediate curative instruction telling the jury to disregard the witness's statement, had Abdullah requested it. Abdullah chose for the court to refrain from issuing a curative instruction. The jury is presumed to follow curative instructions given by the court. Hinkle v. City of Clarksburg, 81 F.3d 416, 427 (4th Cir. 1996). Had Abdullah agreed to the remedy of a curative instruction, it would have been presumed that the jury would have followed the instruction.

Scott's reference to a person being shot was the only reference to the murder and injury during the four day trial until Abdullah testified. The Government presented fifteen witnesses. This demonstrates that the remark was indeed fleeting and incidental. See United States v. Vogt, 910 F.2d 1184, 1193 (4th Cir. 1990) (finding lack of prejudice to warrant mistrial where witness's impermissible testimony "came up incidentally, neither the witness nor the prosecution made any repeated reference to it,

and the court carefully instructed as to [the testimony's] permissible use.").

In addition, there was testimony from four eyewitnesses who saw Abdullah possess the firearm. There was also testimony that a bullet was found in Abdullah's jacket pocket matching the caliber and brand of bullets found in the firearm. Abdullah's fingerprints were also found on the firearm's magazine. We therefore conclude that Abdullah has not shown undue prejudice and the jury could have found sufficient evidence of firearm possession to convict Abdullah without relying on any inference from Scott's impermissible statement.

Next, Abdullah objects to the district court sentencing him based on a cross reference to first degree murder. He argues that sentencing on a murder cross reference violates his Sixth Amendment rights, relying on Apprendi v. New Jersey, 530 U.S. 466 (2000), Ring v. Arizona, 536 U.S. 584 (2002), and United States v. Booker, 543 U.S. 220 (2005). In Booker, the Supreme Court held that Blakely v. Washington, 542 U.S. 296 (2004), applies to the federal Sentencing Guidelines and that the mandatory Guidelines scheme, which provided for sentence enhancements based on facts found by the court by a preponderance of the evidence, violated the Sixth Amendment. See Booker, 543 U.S. at 226-27, 245. The Court remedied the constitutional violation by severing and excising the statutory provisions that mandate sentencing and appellate review

under the Guidelines, thus making the Guidelines advisory. 543 U.S. at 245.

However, in imposing a sentence post-Booker, courts still must calculate the applicable Guidelines range after making the appropriate findings of fact and consider the range in conjunction with other relevant factors under the Guidelines and 18 U.S.C.A. § 3553(a) (West 2000 & Supp. 2007). United States v. Moreland, 437 F.3d 424, 432 (4th Cir.), cert. denied, 126 S. Ct. 2054 (2006). Here, the district court sentenced Abdullah post-Booker and appropriately treated the Guidelines as advisory. The sentencing court properly made factual findings concerning sentencing factors by a preponderance of the evidence, including whether first degree murder was related to the count of conviction. See United States v. Morris, 429 F.3d 65, 72 (4th Cir. 2005), cert. denied, 127 S. Ct. 121 (2006). The court sentenced Abdullah after considering and examining the Sentencing Guidelines and the § 3553(a) factors, as instructed by Booker. Therefore, there is no Sixth Amendment error.

Finally, Abdullah argues that the evidence presented by the Government was not sufficient to support a finding of murder in the first degree by a preponderance of the evidence for sentencing purposes. U.S. Sentencing Guidelines Manual § 2K2.1 (2003) provides a cross-reference to the most analogous homicide guideline to be applied if death resulted from the firearm offense and the

cross reference would yield a higher offense level than the one which would otherwise apply.  See USSG § 2K2.1(c)(1)(B).  This court reviews a district court's factual findings supporting the applicability of the murder cross-reference for clear error. United States v. Crump, 120 F.3d 462, 467-68 (4th Cir. 1997).  If the district court's findings "may rationally be said to be supported by a preponderance of the evidence, they may not be disturbed on appeal."  Id. at 468.  Abdullah maintains that the shooting was random and not premeditated.  Abdullah submits that he should have been sentenced based only on second degree murder.

"Malice aforethought, as provided in 18 U.S.C.A. § 1111(a) (West Supp. 2007), is the distinguishing characteristic which, when present, makes a homicide murder rather than manslaughter."  United States v. Fleming, 739 F.2d 945, 947 (4th Cir. 1984).  To show that malice is present, the government is not required "to show an intent to kill or injure."  United States v. Williams, 342 F.3d 350, 356 (4th Cir. 2003) (citing Fleming, 739 F.2d at 947).  Instead, "malice aforethought may be established by evidence of conduct which is reckless and wanton and a gross deviation from a reasonable standard of care, of such a nature that a jury is warranted in inferring that defendant was aware of a serious risk of death or serious bodily harm."  Id. (internal quotation and citation omitted).

The first degree murder cross reference applies in cases of premeditated killing. USSG § 2A1.1, cmt. (n.1). "'Premeditation' is a fully formed conscious purpose to kill that may be formed in a moment and need only exist for such time as will allow the accused to be conscious of the nature of the act he is about to commit and the probable result of that act." 40 Am. Jur. 2d Homicide § 44 (2007).

At sentencing, the Government stated that Abdullah stipulated to malice aforethought. The district court determined Abdullah acted with premeditation. The court cited Lane's statement that Abdullah said he was going to shoot for real and Boyd's testimony that Abdullah told him to give him the gun because he knew what to do with it. We find that these facts demonstrate that Abdullah consciously and maliciously fired into the crowd of people and the first degree murder cross reference was appropriate.

We therefore affirm the judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

- 11 -